**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

GLENN R. HEYMAN, as Trustee for
the Estate of Unis International
Corporation, an Illinois corporation,
<u>Plaintiff-Appellant,</u>

and

UNIS INTERNATIONAL CORPORATION, an

No. 95-2929

Illinois corporation,
<u>Plaintiff,</u>

v.

M. L. MARKETING COMPANY, a
Maryland corporation,
<u>Defendant-Appellee.</u>

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Deborah K. Chasanow, District Judge.
(CA-93-1508-DKC)

Argued: March 6, 1997

Decided: June 16, 1997

Before MICHAEL and MOTZ, Circuit Judges, and
GOODWIN, United States District Judge for the
Southern District of West Virginia, sitting by designation.

_____

Affirmed by published opinion. Judge Goodwin wrote the opinion, in
which Judge Michael and Judge Motz joined.

_____

**COUNSEL**

**ARGUED:** James Paul Oetken, JENNER & BLOCK, Washington, D.C., for Appellant. Robert Michael Marino, REED, SMITH, SHAW & MCCLAY, Washington, D.C., for Appellee. **ON BRIEF:** Carl S. Nadler, JENNER & BLOCK, Washington, D.C., for Appellant. George R. Clark, REED, SMITH, SHAW & MCCLAY, Washington, D.C., for Appellee.

_____

**OPINION**

GOODWIN, District Judge:

Glenn Heyman, bankruptcy trustee for Unis International Corporation (Unis), appeals a district court order denying his motion to vacate an order dismissing Unis's claims against M.L. Marketing Co. (Marketing) for failure to obtain counsel. We find no abuse of discretion and affirm the district court's denial of Mr. Heyman's motion.

I.

This case began on May 21, 1993 when Unis filed its Complaint. The case proceeded as usual until November 1, 1994 when two of Unis's three lawyers withdrew. Unis's only remaining attorney, William A. Hylton, Jr., filed a motion to withdraw on December 21, 1994. Pursuant to the Local Rules of the District of Maryland,**1** Mr.

_____

**1** Local Rule 101.3(b) states in pertinent part:

> In the case of any party other than an individual, including corporations, partnerships, unincorporated associations and government entities, appearance of counsel may be withdrawn only with leave of Court and if . . . withdrawing counsel files a certificate stating (a) the name and last known address of the client, and (b) that the written notice has been mailed to or otherwise served upon the client at least five days previously advising the client of counsel's proposed withdrawal and notifying it that it must have new counsel enter an appearance or be subject to the dismissal of its claims and/or default judgment on claims against

Hylton notified his client, Unis, that it must have new counsel enter an appearance within thirty days of counsel's withdrawal or be subject to dismissal of its Complaint. On March 9, 1995, the district court granted Mr. Hylton's motion, leaving Unis without counsel and giving it thirty days to obtain new counsel and to have counsel make an appearance.

On April 4, 1995, a few days before the deadline, Unis filed for bankruptcy under Chapter 7 of the Bankruptcy Code, and Mr. Heyman was appointed trustee.[2] As trustee, Mr. Heyman stepped into the shoes of Unis in its action against Marketing. Section 108 of the Bankruptcy Code gives trustees a sixty-day extension from the date of filing to comply with the Local Rule. Therefore, Mr. Heyman had until June 3, 1995 to have counsel enter an appearance and thereby avoid dismissal. Mr. Heyman did nothing. The district court, unaware of the bankruptcy and the extension, dismissed Unis's Complaint on April 28, 1995.

Mr. Heyman did not examine the litigation file before April 28, 1995. If he had, he would have discovered that the Complaint was subject to dismissal for failure to have counsel appear. If he had examined the case file before June 3, 1995, he would have discovered that the Complaint had been dismissed, but that he was entitled to relief because of the sixty-day extension provided by 11 U.S.C. § 108. He did neither. Not until sometime between July 7 and August 2, 1995 -- that is, between thirty-four and sixty days after the sixty-day extension -- did Mr. Heyman learn that the Complaint had been dismissed. By then, the time to appeal the dismissal had run, and Rule

_____

it. In the event that within thirty days of the filing of the motion to withdraw, new counsel has not entered an appearance, the Court may take such action, if any, that it deems appropriate, including granting the motion to withdraw and dismissing any affirmative claim for relief asserted by the party and/or directing the party to show cause why a default should not be entered on claims asserted against it.

[2] The bankruptcy filing listed Unis's action against Marketing as a $244,000 account receivable and noted that a collection action was pending in the United States District Court of Maryland.

3

60(b) provided the only possibility of reinstating the action. Mr. Heyman had his lawyers file a Rule 60(b) motion on August 15, 1995.

II.

Under Rule 60(b) of the Federal Rules of Civil Procedure, the court may relieve a party or a party's legal representative from a final order for the following reasons: (1) excusable neglect; (2) newly discovered evidence; (3) fraud; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; or (6) any other reason justifying relief. FED. R. CIV. P. 60(b). Mr. Heyman asserted in his Rule 60(b) motion that the dismissal order resulted from his "excusable neglect" or from some "other reason justifying relief." See FED. R. CIV. P. 60(b)(1), (6).**3** The district court denied Mr. Heyman's motion and he appealed. We review denials of Rule 60(b) motions for an abuse of discretion. See National Credit Union Admin. Bd. v. Gray, 1 F.3d 262, 265 (4th Cir. 1993).

In Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp., 843 F.2d 808 (4th Cir. 1988), we recognized that default judgments pit the court's strong preference for deciding cases on the merits against countervailing interests in finality and in preserving the court's ability to control its docket. We established two analytical approaches under Rule 60(b) in cases of default: (1) those that involve a blameless party and a blameworthy attorney, and (2) those that involve a blameworthy party.

We stated that "when [a] party is blameless and the attorney is at fault, the [court's interest in reaching the merits] control[s] and a default judgment should ordinarily be set aside." Augusta, 843 F.2d at 811. That is, "when the party is blameless, his attorney's negligence qualifies as a `mistake' or as `excusable neglect' under Rule 60(b)(1)." Id.; see also United States v. Moradi, 673 F.2d 725 (4th

_____

**3** As a threshold matter, Mr. Heyman must show: (1) that the Rule 60(b) motion is timely; (2) that Marketing will not suffer unfair prejudice if the default judgment is set aside; and (3) that the claim is meritorious. See National Credit Union Admin. Bd. v. Gray, 1 F.3d 262, 264 (4th Cir. 1993) (noting threshold considerations for Rule 60(b) relief). Mr. Heyman has met these threshold considerations.

4

Cir. 1982); Lolatchy v. Arthur Murray, Inc., 816 F.2d 951 (4th Cir. 1987). However, when dismissal is caused by the negligence of a party, vacatur is not granted as freely. See Augusta, 843 F.2d at 810-12. As we noted in Augusta, the stricter analysis of Park Corp. v. Lexington Insurance Co., 812 F.2d 894 (4th Cir. 1986), then applies: "When the party is at fault, the [court's interest in finality and efficiency] dominate[s] and the party must adequately defend its conduct in order to show excusable neglect." Augusta , 843 F.2d at 811 (citing Park, 812 F.2d at 897).

Mr. Heyman contends that a bankruptcy trustee's relationship to the estate's creditors is similar to an attorney-client relationship because creditors are the real parties in interest and are vulnerable to injury caused by a bankruptcy trustee's neglect. Therefore, he argues that this case should be analyzed under Augusta 's liberal approach to default cases in which there is a blameless party.

A.

Mr. Heyman's argument that a bankruptcy trustee is more like an attorney for the creditors than a successor to the management of the debtor corporation is similar to the argument made by the respondents in Commodity Futures Trading Commission v. Weintraub, 471 U.S. 343 (1985). In Weintraub, the United States Supreme Court addressed "whether the trustee of a corporation in bankruptcy has the power to waive the debtor corporation's attorney-client privilege with respect to communications that took place before the filing of the petition in bankruptcy." Id. at 345. The respondents argued that a Chapter 7 bankruptcy trustee should not succeed to management's control of the privilege because "as a practical matter bankruptcy trustees represent only creditors." Id. at 355. The Supreme Court was unpersuaded.

The Supreme Court began its analysis by "consider[ing] the roles played by the various actors of a corporation in bankruptcy to determine which is most analogous to the role played by the management of a solvent corporation." Id. at 351. The Court reasoned that the party whose role was most analogous to the management of a solvent corporation should control the attorney-client privilege of a corporation in bankruptcy. Recognizing the extensive powers and duties which the Bankruptcy Code gives the trustee, the Court concluded that "the

5

trustee plays the role most closely analogous to that of a solvent corporation's management." Id. at 353.

Mr. Heyman's argument is unpersuasive for reasons similar to those that dictated the result in Weintraub. Unis's pending action against Marketing passed to Mr. Heyman pursuant to 11 U.S.C. § 541. See 10 COLLIER ON BANKRUPTCY ¶ 7017.02, at 7017-2 (1996) ("[A]ctions are property of the estate which pass to a trustee pursuant to section 541 of the Code."). Chapter 7 bankruptcy trustees have a duty to "collect and reduce to money the property of the estate." See 11 U.S.C. § 704(1). As in Weintraub, Mr. Heyman played the role most analogous to that of a solvent corporation's management. Accordingly, we should treat post-petition neglect by Mr. Heyman in the same manner as we would have treated pre-petition neglect by Unis's management.

Support for this conclusion is also found in the language of Rule 60(b). Mr. Heyman assumed the role of Unis's management and became the bankruptcy estate's "legal representative." FED. R. CIV. P. 60(b); see Casco Chem. Co. v. Superintendence Co., 335 F.2d 645, 651 (5th Cir. 1964) (finding that a bankruptcy trustee is a legal representative for purposes of Rule 60(b)). This position gave him standing to bring a Rule 60(b) motion. If Mr. Heyman was the estate's lawyer, he would not have had standing to file a Rule 60(b) motion because attorneys are not "legal representatives" for the purposes of Rule 60(b). See Andrews & Kurth, L.L.P. v. Wright Killen & Co., 37 F.3d 230, 234 (5th Cir. 1994) (finding that the former attorney of a bankruptcy estate does not qualify as a party's legal representative because legal representatives are "only those individuals who [are] in a position tantamount to that of a party"); Western Steel Erection Co. v. United States, 424 F.2d 737, 739 (10th Cir. 1970) (holding that an attorney does not have standing to move under Rule 60(b) as a "legal representative"); Ratner v. Bakery & Confectionery Workers Int'l Union, 394 F.2d 780 (D.C. Cir. 1968). As trustee, Mr. Heyman is the "party's legal representative." He is not the estate's lawyer or the creditor's lawyer. His fault is tantamount to the fault of a party. See Kem Mfg. Corp. v. Wilder, 817 F.2d 1517, 1520 (11th Cir. 1987) (stating that "the term legal representative was intended to reach only those individuals who were in a position tantamount to that of a

6

party"). Therefore, unlike Augusta, this is not a "blameless party" case.

Mr. Heyman also argues that we should extend the liberal Augusta approach to this case because innocent creditors of the bankrupt estate were injured by the dismissal. Appellant would have us treat blameless and interested third parties in the same manner as we treat a blameless party (or a party's legal representative). We refuse to do so. Such a substitution would be contrary to the plain wording of the Rule and our decided cases.

Park Corp. v. Lexington Insurance Co., 812 F.2d 894 (4th Cir. 1986), provides a useful example of the problems that would be created by extending Augusta to permit relief when the party is blameworthy, but innocent third parties suffer injury as a consequence of a default judgment. In Park, the defendant Lexington Insurance Company (Lexington) failed to answer after having been properly served. A default judgment was entered against Lexington in the amount of $429,066.95, and Lexington moved for relief under Rule 60(b). The district court denied Lexington's Rule 60(b) motion. On appeal, we found no abuse of discretion in the district court's refusal to find excusable neglect. If we had applied Mr. Heyman's reasoning in Park, we would have reversed the district court's denial of the Rule 60(b) motion as an abuse of discretion. Presumably, Lexington's blameless shareholders suffered a devaluation of their stock when a default was entered due to the neglect of Lexington's corporate officers.[4] If we were to search for a blameless third party injured by the default, Park and virtually every default case would be subject to reopening, and the recognized interest in finality would be overwhelmed.

Litigation is often pursued by a party's legal representative. Administrators and executors act on behalf of probate estates. Trustees act on behalf of trusts. Guardians represent minors and persons judged incompetent. When a legal representative stands in a position tantamount to the party, the law generally provides safeguards to

_____

[4] As noted in Weintraub, a trustee's fiduciary duty to a debtor corporation's creditors is similar to the fiduciary duty that corporations (solvent or otherwise) owe their shareholders. Weintraub , 471 U.S. at 355.

7

ensure that the interest of the beneficial party is protected.**5** If appellant's view were adopted, collateral injury to third parties would almost always provide legal representatives with a foolproof method of avoiding default judgments.

District courts must be allowed sufficient disciplinary authority to control their dockets. Without the ability to exact significant penalties when parties ignore court orders, district courts would be left with nothing but hollow threats of dismissal.

> There is a natural tendency on the part of reviewing courts, properly employing the benefit of hindsight, to be heavily influenced by the severity of outright dismissal as a sanction for failure to comply with a[n] . . . order . . . . But [dismissal] must be available to the District Court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent.

National Hockey League v. Metropolitan Hockey Club, 427 U.S. 639, 642-43 (1976).

B.

Because Mr. Heyman does not qualify for Augusta 's liberal approach to Rule 60(b) relief, he must proceed under Park's stricter approach. That is, Mr. Heyman must show an acceptable reason for his neglect. Mr. Heyman provides three excuses for his neglect.

Mr. Heyman's first excuse was that the circumstances of the case were "anomalous." However, the dismissal was not caused by anomalous circumstances. Rather, dismissal was caused by Mr. Heyman's failure to make even a cursory review of the litigation file. Mr. Hey-

_____

**5** For example, trustees in bankruptcy are required to post bond to protect the estate from potential negligence. Mr. Heyman was required to post such a bond. Under 11 U.S.C. § 322, a creditor can make a claim against the trustee's bond when the trustee's neglect results in injury to the creditor.

8

man's second excuse was that the bankruptcy filing caused procedural confusion. Bankruptcy filings often result in procedural confusion. Congress anticipated this confusion and made allowances for it. Among other provisions, 11 U.S.C. § 108(b) provides trustees with at least sixty days to take control of a case and to make appropriate filings. Mr. Heyman failed to file within the extra time allotted by § 108. Finally, Mr. Heyman argues that he was overworked because he was assigned as trustee in thirty-two actions. If Mr. Heyman could not satisfactorily perform his obligations, he should not have accepted the appointment. The district court's refusal to accept any of Mr. Heyman's excuses was not an abuse of discretion.

III.

Finding no abuse of discretion, the district court order appealed from is accordingly

AFFIRMED.

9