<u>**UNPUBLISHED**</u>

**UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT**

---

**No. 07-1699**

---

JAMES CROSS; CHARLES CALKINS; EDWARD HUYLEBROECK; JAMES
LEE; JERRY BUTLER; PAMELA WELLS; PATRICIA J. WILLIAMSON;
HEIDI SCHULLER, and all other similarly situated plan
participants and beneficiaries in the Fleet Reserve
Association Defined Benefit Pension Plan,

Plaintiffs – Appellees,

v.

NOEL BRAGG; FLEET RESERVE ASSOCIATION PENSION PLAN,

Defendants – Appellants,

and

RICHARD B. SMITH; RALPH A. SCHMIDT; LAWRENCE J. BOUDREAUX;
EUGENE SMITH; ROBERT E. KING; RUSSELL E. BELT; FOREST E.
HARRELL; VICTOR MIRANDA; LINDELL C. CLYMER; DEAN F. MILLER,

Defendants.

---

**No. 07-1755**

---

JAMES CROSS; CHARLES CALKINS; EDWARD HUYLEBROECK; JAMES
LEE; JERRY BUTLER; PAMELA WELLS; PATRICIA J. WILLIAMSON;
HEIDI SCHULLER, and all other similarly situated plan
participants and beneficiaries in the Fleet Reserve
Association Defined Benefit Pension Plan,

Plaintiffs – Appellants,

v.

NOEL BRAGG; FLEET RESERVE ASSOCIATION PENSION PLAN,

        Defendants – Appellees,

      and

RICHARD B. SMITH; RALPH A. SCHMIDT; LAWRENCE J. BOUDREAUX; EUGENE SMITH; ROBERT E. KING; RUSSELL E. BELT; FOREST E. HARRELL; VICTOR MIRANDA; LINDELL C. CLYMER; DEAN F. MILLER,

        Defendants.

---

**No. 08-1190**

---

JAMES CROSS; CHARLES CALKINS; EDWARD HUYLEBROECK; JAMES LEE; JERRY BUTLER; PAMELA WELLS; PATRICIA J. WILLIAMSON; HEIDI SCHULLER, and all other similarly situated plan participants and beneficiaries in the Fleet Reserve Association Defined Benefit Pension Plan,

        Plaintiffs – Appellants,

      v.

NOEL BRAGG; FLEET RESERVE ASSOCIATION PENSION PLAN,

        Defendants – Appellees,

      and

RICHARD B. SMITH; RALPH A. SCHMIDT; LAWRENCE J. BOUDREAUX; EUGENE SMITH; ROBERT E. KING; RUSSELL E. BELT; FOREST E. HARRELL; VICTOR MIRANDA; LINDELL C. CLYMER; DEAN F. MILLER,

        Defendants.

---

Appeals from the United States District Court for the District of Maryland, at Baltimore.  William D. Quarles, Jr., District Judge.  (1:05-cv-00001-WDQ)

---

Argued:  March 24, 2009          Decided:  July 24, 2009

Before MICHAEL, MOTZ, and KING, Circuit Judges.

_____

Affirmed in part, vacated in part, and remanded by unpublished opinion. Judge King wrote the opinion, in which Judge Michael and Judge Motz joined.

_____

**ARGUED**: Joseph Semo, SEMO LAW GROUP, Washington, D.C., for Noel Bragg and Fleet Reserve Association Pension Plan. Richard Paul Neuworth, LEBAU & NEUWORTH, LLC, Baltimore, Maryland, for James Cross; Charles Calkins; Edward Huylebroeck; James Lee; Jerry Butler; Pamela Wells; Patricia J. Williamson; Heidi Schuller, and all other similarly situated plan participants and beneficiaries in the Fleet Reserve Association Defined Benefit Pension Plan.

_____

Unpublished opinions are not binding precedent in this circuit.

KING, Circuit Judge:

The defendants, Fleet Reserve Association Pension Plan (the "Plan") and its Administrator, Noel Bragg, appeal from the district court's award of summary judgment to the plaintiffs in this civil action, pursued under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001-1461 ("ERISA"). More specifically, the defendants contend that the court erred in prohibiting them from altering the benefits calculation formula of the Plan, thus rendering them liable to the plaintiffs for additional benefits. By cross-appeal, the plaintiffs challenge the court's denial — on the basis of a timeliness ruling — of their request for attorney's fees. As explained below, we affirm the award of summary judgment, vacate the denial of attorney's fees, and remand.

I.

A.

The Plan was established by the Fleet Reserve Association (the "Association") in 1972, and its terms were reissued in 1985 (the "1985 plan"). The 1985 plan included a benefits calculation formula referred to by the parties and the district court as the "Step Formula." In 1996, the Association's Board of Directors (the "Board") revised the 1985 plan and issued a

4

full restatement thereof (the "1996 plan").[1]  The 1996 plan adopted a different benefits calculation formula — referred to by the parties and the district court as the "Integrated Formula" — that replaced the Step Formula.  Importantly, the Integrated Formula provides for substantially greater benefits to the Plan's participants and beneficiaries.[2]  Between 1996 and 2002, the plaintiffs in this proceeding were paid benefits under the 1996 plan, but those benefits were calculated under the Step Formula of the 1985 plan, rather than under the Integrated Formula of the 1996 plan.

The Association was apparently unaware of any issue concerning the proper calculation of the plaintiffs' benefits until early 2002.  At this point, Bragg, as the Plan's Administrator, undertook an investigation to determine the correct benefits calculation formula.  He concluded that the 1996 revision of the Plan — from the Step Formula to the

---

[1]  The "Plan," as referred to herein, is the ERISA trust named as a defendant.  The terms "1985 plan" and "1996 plan" are used to refer to differing versions of the Plan.

[2]  ERISA defines a plan "participant" as "any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan," 29 U.S.C. § 1002(7), and a plan "beneficiary" as "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder," id. § 1002(8).

Integrated Formula — had been a mistake, and that inclusion of the Integrated Formula in the 1996 plan was simply a scrivener's error. Bragg explained the mistake to the Board at its July 2002 meeting, and the Association announced the scrivener's error at its National Convention later that year. In August 2002, Bragg, on behalf of the Plan, sought permission from the IRS to revert to the Step Formula for tax purposes and thus not be subjected to tax penalties. The Plan's request to the IRS contended that the Board should be authorized to so revise the 1996 plan because its inclusion of the Integrated Formula was a scrivener's error. The IRS granted the Plan's request in October 2003, and, in December 2003, the Board formally revised the Plan to include the Step Formula.

On April 24, 2004, having ascertained that they were entitled to benefits under the Integrated Formula rather than the Step Formula, the plaintiffs filed claims with the Plan for additional benefits. Bragg promptly denied these claims, and the plaintiffs then pursued administrative appeals. In his January 14, 2005 letter rejecting the plaintiffs' final administrative appeal, Bragg relied on three findings: first, there was "no substantial evidence that the Integrated Formula was written into the Plan before 1996"; second, there was "clear and convincing evidence that the Integrated Formula was written into the Plan in 1996 as a result of a scrivener's error"; and

6

third, there had been no violation of "ERISA, . . . the Internal Revenue Code, or any provision of the Plan" because inclusion of the Integrated Formula was a scrivener's error.  J.A. 295.[3]

B.

On January 3, 2005, the plaintiffs filed this civil action in the District of Maryland.[4]  The Complaint, as amended on April 12, 2005, alleged four ERISA violations:  that the defendants had violated ERISA's reporting and disclosure requirements (Count I); breached their fiduciary duties to the plaintiffs (Count II); contravened the ERISA mandate on plan amendments and notification (Count III); and, of importance here, erroneously denied the plaintiffs' claims for additional benefits under the Integrated Formula (Count IV).

On August 11, 2005, in connection with a motion to transfer venue, the defendants asserted that the claims of one plaintiff

---

[3] Citations herein to "J.A. __" refer to the Joint Appendix filed by the parties in this appeal.

[4] The plaintiffs are James Cross, Charles Calkins, Edward Huylebroeck, James Lee, Jerry Butler, Pamela Wells, Patricia J. Williamson, and Heidi Schuller.  The Complaint also named as plaintiffs "all other similarly situated plan participants and beneficiaries in the Fleet Reserve Association Defined Benefit Pension Plan," but, despite this allegation, certification of a class action was never sought. J.A. 1.  Although the individual Board members were named as defendants in the Complaint, the claims against them were voluntarily dismissed.

— James Cross — were time-barred under the applicable three-year statute of limitations. In rejecting this contention, the court explained that the limitations period "does not begin to run until there has been a formal and final denial of a benefits claim." See Cross v. Fleet Reserve Ass'n Pension Plan, No. 1:05-cv-00001, slip op. at 12 (D. Md. Aug. 23, 2005) (the "Venue Opinion").[5] According to the Venue Opinion, the limitations period had not been triggered when this litigation commenced, in that the Complaint was filed on January 3, 2005, eleven days before Bragg's denial of the plaintiffs' final administrative appeal.

On May 26, 2006, the defendants sought summary judgment on the four claims of the Complaint. With respect to Count IV — the only claim disputed on appeal — the defendants contended that the district court was obliged to defer to the "scrivener's error" determinations of Bragg, as the Plan's Administrator, and the IRS. The plaintiffs submitted a cross-motion for summary judgment on Count IV, maintaining that the requirements for correction of a scrivener's error had not been satisfied, and that the IRS ruling was irrelevant.

On September 28, 2006, the district court ruled on the summary judgment motions. See Cross v. Fleet Reserve Ass'n

---

[5] The Venue Opinion is found at J.A. 228-40.

8

Pension Plan, No. 1:05-cv-00001 (D. Md. Sept. 28, 2006) (the "Summary Judgment Opinion" and the "Summary Judgment Order").[6] The court awarded summary judgment to the plaintiffs on Count IV, explaining in its Summary Judgment Opinion that they were entitled to receive benefits under the Integrated Formula. In so ruling, the court rejected the defendants' contention that inclusion of the Integrated Formula in the 1996 plan was a correctable scrivener's error. More specifically, the court determined that the exceptional circumstances necessary for an equitable reformation of the 1996 plan had not been shown, and that Bragg had thus exceeded his authority in reforming the Plan. The court did not address the defendants' contention regarding the IRS ruling. Finally, the court also granted summary judgment to the plaintiffs on Count III, to the defendants on Count I, and also to the defendants on Count II (as to all plaintiffs save Charles Calkins).[7]

On October 5, 2006, the defendants filed a motion to alter or amend the district court's judgment on Counts II, III, and IV, pursuant to Rule 59(e) of the Federal Rules of Civil

---

[6] The Summary Judgment Opinion is found at J.A. 921-41, and the Summary Judgment Order is found at J.A. 942.

[7] In the Summary Judgment Opinion, the district court found that only plaintiff Calkins possessed standing to pursue the claim in Count II.

9

Procedure. By their Rule 59(e) motion, the defendants requested: (1) summary judgment on Count II with respect to all plaintiffs; (2) clarification of whether the court's rulings had disposed of all claims; and (3) a more specific recitation of the relief granted to the plaintiffs on Counts III and IV. The plaintiffs responded to the Rule 59(e) motion on October 27, 2006, and at the same time submitted notice that they intended to seek an attorney's fee award under the provisions of 29 U.S.C. § 1132(g)(1).[8]

On December 18, 2006, the district court disposed of the Rule 59(e) motion and purported to enter final judgment. See Cross v. Fleet Reserve Ass'n Pension Plan, No. 1:05-cv-00001 (D. Md. Dec. 18, 2006) (the "First Reconsideration Opinion" and the "First Reconsideration Order").[9] First of all, the court ruled that Calkins, as the sole remaining plaintiff in Count II, lacked standing to pursue his claim; thus, the court entered summary judgment for the defendants on Count II with respect to all plaintiffs. The court ruled on Counts III and IV, however, that the defendants were obliged to "pay the Plaintiffs all

---

[8] In an ERISA civil action by a participant or beneficiary, "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1).

[9] The First Reconsideration Opinion is found at J.A. 943-52, and the First Reconsideration Order is found at J.A. 953-54.

benefits owed under the terms of the Plan, together with prejudgment interest." First Reconsideration Order 2. As a result, the court directed the parties to "determine the actual dollar amount of pension benefits owed, including prejudgment interest, and communicate the result to the Court no later than 30 days from the date of this Order." Id. Finally, the First Reconsideration Order set forth a timetable for attorney's fee claims and declared that "[t]his case BE, and HEREBY IS, CLOSED." Id.

On January 8, 2007, the defendants filed a notice of appeal from the First Reconsideration Order. On January 16, 2007, while the appeal was pending, the plaintiffs filed their motion for attorney's fees. We dismissed the defendants' appellate effort as interlocutory on March 26, 2007, and our mandate on the dismissal was issued on April 17, 2007.[10] On April 26, 2007, the plaintiffs submitted a memorandum in support of their attorney's fee motion. The defendants replied to the plaintiffs' fee request on June 5, 2006, contending, inter alia, that the plaintiffs' supporting memorandum was untimely.

---

[10] In disposing of the defendants' interlocutory appeal, we granted the plaintiffs' motion to dismiss, which relied on the fact that the district court had not entered a final judgment because it had failed to determine individual award amounts and prejudgment interest issues.

11

On June 1, 2007, the defendants filed yet another motion for reconsideration, seeking an assessment of whether the plaintiffs possessed standing to assert their claim in Count III and alleging that all the claims in the Complaint were untimely. In this second reconsideration motion, the defendants asserted that the plaintiffs' claims were time-barred by not only the applicable statute of limitations, which had already been asserted with respect to plaintiff Cross in the venue proceedings, but also time-barred under the administrative provisions of the 1996 plan, an assertion then raised for the first time. The plaintiffs replied that both limitations arguments had been waived, in that they should have been raised prior to the issuance of the Summary Judgment Order.

On July 3, 2007, the district court issued its final decision in this case. See Cross v. Fleet Reserve Ass'n Pension Plan, No. 1:05-cv-00001 (D. Md. July 3, 2007) (the "Second Reconsideration Opinion" and the "Second Reconsideration Order").[11] First, the court ruled that the plaintiffs' attorney's fee claim was untimely. Second, it revisited Count III, vacated its earlier ruling in favor of the plaintiffs, and instead granted summary judgment to the defendants because the

_____

[11] The Second Reconsideration Opinion is found at J.A. 955-73, and the Second Reconsideration Order is found at J.A. 974-76.

12

plaintiffs lacked standing to pursue the Count III claim. Finally, the court rejected the defendants' statute of limitations contention on the reasoning of its Venue Opinion, and it determined that the defendants' administrative limitations contention had been waived. As a result, the court awarded summary judgment to the defendants on Counts I, II, and III, and to the plaintiffs on Count IV.[12]

On January 28, 2008, the district court denied the plaintiffs' fee request reconsideration motion. See Cross v. Fleet Reserve Ass'n Pension Plan, No. 1:05-cv-00001 (D. Md. Jan. 28, 2008) (the "Final Fee Opinion").[13] The parties filed timely notices of appeal, and we possess jurisdiction pursuant to 28 U.S.C. § 1291.[14]

---

[12] Under the district court's rulings, the plaintiffs were entitled to a total award on Count IV of $460,009.19, plus post-judgment interest. This amount was determined by calculating the difference between the Step Formula and Integrated Formula for each plaintiff, including prejudgment interest through September 28, 2006. The individual awards were as follows: Wilfred Butler, $27,693.88; Charles Calkins, $61,018.04; James Cross, $123,215.31; Edward Huylebroek, $159,895.75; James Lee, $65,556.25; Heidi Schuller, $935.41; Pamela Wells, $7,577.66; and Patricia Wilson, $14,116.89. See Second Reconsideration Order 2-3.

[13] The Final Fee Opinion is found at J.A. 981-85.

[14] In summary, there have been four appeals in these proceedings, three of which are consolidated for disposition here. The defendants' first effort to appeal, filed on January 8, 2007 (No. 07-1031), was disposed of as interlocutory by our March 26, 2007 dismissal order. Next, the defendants, on July (Continued)

13

In their appeal, the defendants challenge only the district court's award of summary judgment to the plaintiffs on Count IV — the ERISA benefits claim. The plaintiffs contend in Count IV that they should have been paid benefits under the Integrated Formula of the 1996 plan rather than under the Step Formula of the 1985 plan, and they have pursued their claim for additional benefits due under 29 U.S.C. § 1132(a)(1)(B). We review de novo a district court's award of summary judgment. See Denzler v. Questech, Inc., 80 F.3d 97, 101 (4th Cir. 1996).

Procedurally, the defendants assert on appeal that the Count IV claim was untimely. They contend that the plaintiffs failed to exhaust their administrative appeals within the authorized time frame and, in the alternative, that the

---

20, 2007, filed a notice of appeal from the district court's summary judgment award to the plaintiffs on Count IV (No. 07-1699). On August 2, 2007, the plaintiffs cross-appealed the summary judgment award to the defendants on Count III (No. 07-1755). Finally, the plaintiffs, on February 8, 2008, filed a notice of appeal from the Final Fee Order (No. 08-1190). Because the plaintiffs did not raise their Count III contentions in their briefs or at oral argument, we deem the plaintiffs' appeal in No. 07-1755 to be waived and thus decline to address it. See Fed. R. App. P. 28(a)(9)(A) ("[T]he [appellant's] argument . . . must contain . . . appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies."); see also Carter v. Lee, 283 F.3d 240, 252 n.11 (4th Cir. 2002); Edwards v. City of Goldsboro, 178 F.3d 231, 241 n.6 (4th Cir. 1999).

plaintiffs' claims are barred by the applicable three-year statute of limitations. On the merits, the defendants maintain that they are entitled to equitable reformation of the scrivener's error in the 1996 plan for three reasons: (1) the actuary who prepared the 1996 plan acknowledged that the Integrated Formula was erroneously included therein; (2) the defendants did not know of the inclusion of the Integrated Formula until they were informed of it by the Plan; and (3) the IRS determined that the Integrated Formula was a scrivener's error. As explained below, these contentions are unpersuasive.

A.

We first assess the defendants' contention that the plaintiffs' Count IV claim is procedurally barred. The defendants maintain that it is barred as untimely for two reasons: first, that the plaintiffs failed to file their administrative appeals within sixty days of receiving their benefit payments, as required by the 1996 plan; and second, that the Count IV claim was not filed within the applicable three-year limitations period. We examine these contentions in turn.

1.

First, the defendants assert that the plaintiffs failed to exhaust their administrative remedies because they did not request an administrative review within the limitations period established by the 1996 plan. In that respect, "internal appeal

limitations periods in ERISA plans are to be followed just as ordinary statutes of limitations," and "[f]ailure to file a request for review within [a plan's] limitations period is one means by which a claimant may fail to exhaust her administrative remedies."  Gayle v. United Parcel Serv., Inc., 401 F.3d 222, 226 (4th Cir. 2005) (internal quotation marks omitted).  These principles, however, are of no assistance to the defendants in this dispute.

Put succinctly, although an administrative limitations defense might have had some merit, the defendants failed to assert it in a timely fashion.  The district court began its analysis of this issue by correctly concluding that the defendants' second motion for reconsideration was filed under Federal Rule of Civil Procedure 60(b).[15]  As such, we review the court's denial of the reconsideration motion for abuse of

---

[15] Pursuant to our precedent, "[i]n cases where a party submits a motion [for reconsideration], which . . . does not refer to a specific Federal Rule of Civil Procedure, [we will] consider[] that motion either a Rule 59(e) motion to alter or amend a judgment, or a Rule 60(b) motion for relief from a judgment or order."  In re Burnley, 988 F.2d 1, 2 (4th Cir. 1992).  Rule 59(e) provides that "[a] motion to alter or amend a judgment must be filed no later than 10 days after the entry of the judgment," but the deadline for filing a Rule 60(b) motion is at least a year after the entry of judgment, see Fed. R. Civ. P. 60(c).  Here, the defendants' second motion for reconsideration was submitted on June 1, 2007 — significantly longer than ten days after the September 28, 2006 Summary Judgment Order and the December 18, 2006 First Reconsideration Order.

16

discretion.  See Heyman v. M.L. Mktg. Co., 116 F.3d 91, 94 (4th Cir. 1997) (recognizing that we review for abuse of discretion court's denial of Rule 60(b) motion for relief from judgment).

Rule 60 has long been recognized as an "attempt[] to strike a proper balance between the conflicting principles that litigation should be brought to an end and that justice must be done."  11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2851 (2d ed. 1995).  In disposing of the administrative limitations issue, the district court concluded that the defendants did not present any "exceptional circumstances" contemplated under Rule 60(b), explaining that

> [t]he contention that the Plaintiffs' benefits claims are barred because of their failure to file a timely administrative appeal was cognizable prior to the Court's September 28, 2006 judgment, and the Defendants waived that defense by failing to assert it promptly in their Answer or motion for summary judgment.  See Peterson v. Air Line Pilots Ass'n, Int'l., 759 F.2d 1161, 1164 (4th Cir. 1985) ("defense of limitations is waived unless asserted promptly by way of answer or motion").

Second Reconsideration Opinion 8-9.  Put simply, in waiting more than eight months after the district court ruled on the summary judgment motions to first assert its contention on the administrative limitations issue, the defendants — as the court ruled — waived the sixty-day limitations defense provided by the 1996 plan.  We thus agree with the court's analysis and are

17

unable to perceive an abuse of discretion in its denial of the Rule 60(b) relief.

2.

The defendants next contend that Maryland's three-year statute of limitations for civil actions bars the plaintiffs' Count IV claim. See Md. Code Ann., Cts. & Jud. Proc. § 5-101 ("A civil action at law shall be filed within three years from the date it accrues . . . ."). Because ERISA itself establishes no limitations period for initiating a cause of action under 29 U.S.C. § 1132, "the federal courts look to state law for an analogous limitation provision to apply." Dameron v. Sinai Hosp. of Baltimore, Inc., 815 F.2d 975, 981 (4th Cir. 1987). When an ERISA plan is alleged to have breached its duty to provide beneficiaries with the benefits due them, the analogous state cause of action is breach of contract. See id.

On this point, the parties agree: the three-year Maryland statute of limitations for individual contract actions applies in this dispute. Nonetheless, the parties disagree on when the limitations period was triggered. The defendants maintain that it was triggered when the plaintiffs received their lump-sum benefit payments from the Plan. The plaintiffs, however, contend that the three-year limitations period was not triggered until they had exhausted the internal administrative appeals

18

provided by the 1996 plan.  As explained below, we agree with the plaintiffs.

Just as ERISA is silent on whether a plaintiff must exhaust his administrative remedies before seeking relief in the courts, it provides no explicit guidance as to when the limitations period begins to run on a benefits claim.  We have previously examined this question, however, and recognized that "Congress intended plan fiduciaries, not the federal courts, to have primary responsibility for claims processing."  Makar v. Health Care Corp. of Mid-Atlantic (Carefirst), 872 F.2d 80, 83 (4th Cir. 1989).  Because access to the courts is meant to be a fail-safe for ERISA claims, "[a]n ERISA cause of action does not accrue until a claim of benefits has been made and formally denied."  Rodriguez v. MEBA Pension Trust, 872 F.2d 69, 72 (4th Cir. 1989).

In this proceeding, the plaintiffs' administrative appeals were not finally denied until January 14, 2005, and their request for reconsideration of such denial was rejected on April 11, 2005.  The plaintiffs filed their Complaint in the district court on January 3, 2005 — well before the 2008 limitations deadline imposed under Maryland law.  We thus reject the defendants' statute of limitations contention, and conclude that the Complaint was timely filed.

B.

Next, we turn to the defendants' contention that inclusion of the Integrated Formula in the 1996 plan was simply a mistake — a "scrivener's error" — entitling them to equitable reformation of the 1996 plan. We review a district court's denial of equitable relief "for abuse of discretion, accepting the court's factual findings absent clear error, while examining issues of law de novo." Dixon v. Edwards, 290 F.3d 699, 710 (4th Cir. 2002). The defendants assert three bases for equitable reformation of the 1996 plan due to a scrivener's error: first, the actuary who drafted the 1996 plan acknowledged that the Integrated Formula was erroneously included therein; second, the plaintiffs did not rely on the Integrated Formula being a part of their pension plan; and third, the IRS agreed that inclusion of the Integrated Formula in the 1996 plan was a scrivener's error. These issues each turn on questions of law, and, assessing them de novo, we agree with the district court that equitable reformation is not warranted.

1.

In assessing the defendants' "scrivener's error" contention, we are guided by the principle that "ERISA plans are contractual documents which, while regulated, are governed by established principles of contract and trust law." Haley v.

20

Paul Revere Life Ins. Co., 77 F.3d 84, 88 (4th Cir. 1996); see also Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 111 (1989) (declaring that courts should be "guided by principles of trust law" in determining standard of review for ERISA claims); Wheeler v. Dynamic Eng'g, Inc., 62 F.3d 634, 638 (4th Cir. 1995) (explaining that terms of ERISA plans are interpreted "under ordinary principles of contract law"). In reviewing benefits claims under ERISA, "we turn to the federal common law of contracts." Denzler, 80 F.3d at 101. We may, however, "use principles of state common law to guide our analysis." Wheeler, 62 F.3d at 638. Importantly, we have recognized that "'a scrivener's error, like a mutual mistake, occurs when the intention of the parties is identical at the time of the transaction but the written agreement does not express that intention because of that error; this permits a court acting in equity to reform an agreement.'" Blackshear v. Reliance Standard Life Ins. Co., 509 F.3d 634, 642 (4th Cir. 2007) (quoting 27 Samuel Williston & Richard A. Lord, A Treatise on the Law of Contracts § 70.93 (4th ed. 2003)). Further, the power to recognize and correct a scrivener's error in an ERISA plan rests exclusively with the courts, and an "administrator cannot simply 'reform' a plan to correct what it unilaterally perceives to be a mistake or error contained in the plan's written terms." Id.

21

A primary purpose of ERISA was to require that participants and beneficiaries be fully advised of their rights under employee benefit plans. See, e.g., 29 U.S.C. § 1102(a)(1) (requiring benefit plans to be written); id. § 1021(a) (requiring plan administrator to deliver summary plan description to participants); id. § 1022(a) (requiring summary plan descriptions to be "written in a manner calculated to be understood by the average plan participant"). Consistent with congressional intent, the Supreme Court has held that a "written [benefit] plan is to be required in order that every employee may, on examining the plan documents, determine exactly what his rights and obligations are under the plan." Curtiss-Wright Corp. v. Schoonejongen, 514 U.S. 73, 83 (1995) (internal quotation marks omitted). Thus, when the terms of an ERISA plan are clear and unambiguous, a federal court is obliged to apply it as written.

In limited circumstances, however, a court is entitled to reform an ERISA plan to correct a mutual mistake or to mitigate a fraud scheme. See Audio Fidelity Corp. v. Pension Benefit Guarantee Corp., 624 F.2d 513, 518 (4th Cir. 1980). Such an action requires that the party seeking reformation present clear and convincing evidence showing that "the mistake [was] mutual, or if unilateral, it [was] accompanied by fraud on the part of the other contracting party." Id.; see also Restatement

22

(Second) of Contracts § 155 (1979) (providing that reformation is only available "[w]here a writing that evidences or embodies an agreement in whole or in part fails to express the agreement because of a mistake of both parties as to the contents or effect of the writing").

In order to establish a mutual mistake, the party seeking reformation must show that the parties to the contract intended to agree to terms that are different from those reflected in the writing. See Restatement (Second) of Contracts § 152 (1979) (providing that if "mistake of both parties at the time a contract was made as to a basic assumption on which the contract was made has a material effect on the agreed exchange of performances, the contract is voidable by the adversely affected party unless he bears the risk of the mistake"); Oliver Wendell Holmes, Jr., The Common Law 280 (G. Edward White ed., Harvard Univ. Press 2009) (1881) (explaining that a mutual mistake exists when there is "a difference in kind between the actual subject-matter and that to which the intention of the parties was directed," resulting in "the terms of the supposed contract, although seemingly consistent, [being] contradictory in matters that [go] to the root of the bargain"); Williston & Lord, supra, § 70:9 ("The law permits reformation of instruments to reflect the true intention of the parties when . . . the party seeking relief is able to establish to the court's satisfaction that

23

both parties intended something other than what is reflected in the instrument in question."). By its very nature, mutual intent requires a manifestation of will from both parties. See Restatement (Second) of Contracts § 155 cmt. a (1979) (requiring "some agreement between the parties prior to the writing" for court reformation due to mutual mistake).

2.

Applying these principles to the dispute on the Integrated Formula of the 1996 plan, the defendants have failed to show that inclusion of that formula in the 1996 plan resulted from a mutual mistake. They have asserted two bases for equitable reformation of the 1996 plan — that the actuary admitted that inclusion of the Integrated Formula was a mistake and that the plaintiffs did not rely thereon — but neither of these contentions demonstrates the intent of the plaintiffs.[16]

The actuary's discovery deposition in this case establishes only that the defendants did not intend to alter the benefits calculation formula — it says nothing about the intent of the plaintiffs. Further, though each of the plaintiffs "acknowledged by affidavit that he had not relied . . . upon the

_____

[16] The defendants do not allege fraud with respect to the plaintiffs, which is essential to reformation of a contract due to unilateral mistake. See Audio Fidelity, 624 F.2d at 518. We therefore need only consider whether a mutual mistake — as opposed to a unilateral one — existed.

24

unambiguous plan documents that included the error . . . , nor [was he] aware of the erroneous Integrated Formula until the plan sponsor announced its investigation into whether an error existed in the plan documents," Br. of Appellants 24, ignorance of a mistake is insufficient proof of a party's intent to the contrary. See Williston & Lord, supra, § 70:9 ("[A] clear mistake by one party, coupled with ignorance by the other party, is not a mutual mistake and will not be corrected."). Taken together, the defendants' assertions fail to establish a mutual mistake. Put succinctly, the defendants have produced no evidence of the plaintiffs' intent, nor have they alleged or shown that there were negotiations with respect to the benefits calculation formula through which such intent could be ascertained. Because its terms are unambiguous and there is a patent lack of evidence of mutual mistake, the district court committed no error by declining to equitably reform the 1996 plan.

3.

Finally, the defendants urge us to defer to the IRS determination that inclusion of the Integrated Formula in the 1996 plan was a scrivener's error, thus justifying an equitable

25

reformation of that provision.[17]  Put simply, however, the IRS

determination is neither helpful nor controlling in this appeal.

A primary purpose of the IRS program — and the only purpose of

the IRS ruling on the 1996 plan — is to authorize an ERISA plan

to amend its provisions without losing the tax exemption

provided for by 26 U.S.C. § 501(a).[18]  Notably, such IRS

proceedings are ex parte, predicated only on the submissions of

the ERISA plan seeking relief.  The IRS determination thus only

resolves issues between the IRS and the ERISA plan — it is not a

formal adjudication, and it does not impact on the relationship

between an ERISA plan and its beneficiaries.  Even though the

IRS may decide whether to tax an ERISA plan, it is not entitled

to alter the contractual rights of a plan beneficiary.  Although

we accord great deference to the IRS with respect to tax policy

and regulation, the judiciary retains its dominion in ERISA

civil actions.  See Blackshear, 509 F.3d at 642 ("[R]eformation

. . . is most decidedly a remedy available in a court of

---

[17]  The IRS ruling was made by the IRS Employee Plans Compliance Resolution System ("EPCRS").  The Plan's application to EPCRS was governed by Rev. Proc. 2002-47, 2002-2 C.B. 133.

[18]  Section 411(d)(6)(A) of Title 26 provides that "[a] plan shall be treated as not satisfying the requirements of this section [and therefore will not constitute a qualified trust under 26 U.S.C. § 401(a)] if the accrued benefit of a participant is decreased by an amendment of the plan."  Section 501(a) provides that "[a]n organization described in . . . section 401(a) shall be exempt from [income] taxation."

26

equity."). Thus, despite the defendants' arguments to the contrary, the IRS ruling relied on by the defendants is not entitled to deference in this proceeding.


                              III.

Finally, we turn to the plaintiffs' cross-appeal on the attorney's fee issue. In this regard, the plaintiffs seek a fee award, pursuant to 29 U.S.C. § 1132(g)(1), for legal services rendered in the district court. As explained below, we vacate the district court's rejection of the plaintiffs' attorney's fee motion as untimely.

                               A.

The guidelines for the submission of motions for attorney's fees in the District of Maryland are spelled out in the court's Local Rule 109.2. That Rule, in relevant part, provides as follows:

> Unless otherwise . . . ordered by the Court, any motion requesting the award of attorneys' fees must be filed within fourteen days of the entry of judgment. The [supporting memorandum] must be filed within thirty-five days from the date the motion is filed: or (unless otherwise ordered by the Court) in the event an appeal is taken from the underlying judgment, within fourteen days of the issuance of the mandate of the Court of Appeals. Any opposition to the motion shall be filed within fourteen days of service of the memorandum. Non-compliance with these time limits shall be deemed to be a waiver of any claim for attorneys' fees.

D. Md. R. 109.2.a.  The district court initially addressed the attorney's fee issue in its First Reconsideration Order of December 18, 2006.  The court then established a timetable for the relevant submissions:

> The parties [are ordered to] submit briefs on the issue of attorneys fees and costs, including the amount thereof, in accordance with the following schedule:
>
>> a. Petition by the Plaintiffs, within 15 days of the date of this Order;
>>
>> b. Response by the Defendants, within 25 days of the date of this Order; and
>>
>> c. Reply by the Plaintiffs, within 30 days of the date of this Order;

First Reconsideration Order 2.  Finally, the Order concluded by declaring that "[t]his case BE, and HEREBY IS, CLOSED."  Id.

Two days thereafter, on December 20, 2006, the plaintiffs filed an unopposed motion to extend the time for the filing of their attorney's fee motion until January 17, 2007.  This extension motion was premised on the assertion that, "[u]nder Local Rule 109 (1) and (2), Plaintiffs Motion for Attorneys Fees and Bill of Costs is due on January 2, 2007."  Cross v. Fleet Reserve Ass'n Pension Plan, No. 1:05-cv-00001 (D. Md. Dec. 20, 2006).  The court granted the unopposed extension request the following day, directing that "Plaintiffs' Motion for Attorneys Fees and Bill of Costs is due on January 17, 2007."  Cross v. Fleet Reserve Ass'n Pension Plan, No. 1:05-cv-00001 (D. Md. Dec.

28

21, 2006) (the "Extension Order"). Soon thereafter, however, on January 8, 2007, the defendants filed their notice of appeal from the First Reconsideration Order, incorrectly perceiving it to be an appealable final decision under 28 U.S.C. § 1291.

The plaintiffs filed their motion for attorney's fees on January 16, 2007, explaining that their supporting memorandum would follow. On January 22, 2007, the defendants filed an opposition to the motion, asserting, inter alia, that the plaintiffs had waived their attorney's fee claim by failing to file a supporting memorandum by January 17, 2007. The plaintiffs replied on January 26, 2007, contending that, under Local Rule 109.2.a, the defendants' January 8, 2007 notice of appeal served to reset the briefing schedule on the attorney's fee issue. Local Rule 109.2.a, if applicable here, would accord the plaintiffs fourteen days after the mandate on that appeal to file their supporting memorandum.

On March 26, 2007, we dismissed as interlocutory the defendants' effort to appeal from the First Reconsideration Order. Our mandate on that appeal issued on April 17, 2007, and the plaintiffs submitted their supporting memorandum on the attorney's fee motion nine days later, on April 26, 2007. The defendants responded to the plaintiffs' attorney's fee memorandum on May 11, 2007. In addition to briefing the merits of the fee claim, the defendants reasserted their timeliness

contention, particularly with respect to legal services rendered prior to the Summary Judgment Order of September 28, 2006. The court, in its Second Reconsideration Opinion of July 3, 2007, concluded that the plaintiffs had waived their attorney's fee claim, explaining that

> [b]y failing to comply with the schedule dictated by Court's December 18, 2006 Order, as extended by the Court on December [21], 2006, the Plaintiffs waived their claim for attorneys' fees. Accordingly, their motion for attorneys' fees will be denied.

Second Reconsideration Opinion 17.

### B.

Generally speaking, we are obliged to accord deference to a district court's interpretation of its own order. See Saudi v. Northrop Grumman Corp., 427 F.3d 271, 279 (4th Cir. 2005). Importantly, however, the Extension Order can at best be characterized as ambiguous. As such, we "must construe its meaning, and in so doing may resort to the record upon which the judgment was based." In re Tomlin, 105 F.3d 933, 940 (4th Cir. 1997) (internal quotation marks omitted). Because this record cannot be squared with the district court's interpretation of the Extension Order, we are constrained to conclude that the court abused its discretion in denying the plaintiffs' attorney's fee request as untimely. See United States v. Delfino, 510 F.3d 468, 470 (4th Cir. 2007) (recognizing that a court may "abuse[] its discretion when it acts arbitrarily or

30

irrationally, . . . relies on erroneous factual or legal premises, or commits an error of law"), cert. denied, 129 S. Ct. 41 (2008).

1.

First of all, in denying the attorney's fee request as untimely by its July 3, 2007 Second Reconsideration Order, the district court failed to recognize that there had been no final judgment in the case until that very Order, thus rendering any attorney's fee submissions by the plaintiffs prior to that date premature. It is manifest that the federal courts prefer to conduct attorney's fee proceedings after the entry of a final judgment. Indeed, the default mechanism in Federal Rule of Civil Procedure 54(d)(2)(B)(i) requires attorney's fee motions "to be filed no later than 14 days after the entry of judgment." This mandate is predicated on the assumption that "the court will want to consider attorneys' fee issues immediately after rendering its judgment on the merits of the case." Fed. R. Civ. P. 54 advisory committee's note. Local Rule 109.2.a echoes this preference, and, although there is no "legislative history" with respect to Rule 109.2.a, we must assume that it is predicated on the same bases as Rule 54(d).

Arguably, the district court possessed the authority under Local Rule 109.2.a to direct the plaintiffs to file their attorney's fee motion and memorandum prior to the entry of a

31

final judgment. Nevertheless, this plainly is not what the court intended when it set the briefing schedule on the attorney's fee issue in its December 18, 2006 First Reconsideration Order. The court contemplated that Order as a final judgment, declaring therein that "[t]his case BE, and HEREBY IS, CLOSED." First Reconsideration Order 2. As a result of the First Reconsideration Order, summary judgment was granted on all four claims in the Complaint — to the defendants on Counts I and II, and to the plaintiffs on Counts III and IV. The court also declined to reform the terms of the 1996 plan, and it ordered the defendants to pay all benefits owed to the plaintiffs, plus prejudgment interest. After entry of the First Reconsideration Order, however, at least two unresolved issues remained — the individual award amounts and prejudgment interest issues.

When the defendants sought to appeal from the First Reconsideration Order, we dismissed that appeal as interlocutory. In so doing, we rejected the central premise for establishing the attorney's fee briefing schedule in the First Reconsideration Order: that such Order constituted a final judgment. Importantly, the final judgment was not entered until the Second Reconsideration Order of July 3, 2007. Rather than acknowledging in the Second Reconsideration Order that it had directed the plaintiffs to prematurely submit their attorney's

32

fee request, however, the district court abused its discretion by denying such request as being briefed in a tardy fashion.

2.

Additionally, assuming final judgment had been entered by way of the December 18, 2006 First Reconsideration Order, the plaintiffs' fee memorandum would nevertheless have been timely filed in accordance with the December 21, 2006 Extension Order. In so concluding, we have considered three possible interpretations of the Extension Order, which granted the plaintiffs' unopposed motion for an extension of time. Significantly, that motion explicitly referenced Local Rule 109.2.a as the governing authority for the attorney's fee proceedings, and the court declared in its single-sentence Extension Order only that "Plaintiffs' <u>Motion</u> for Attorneys Fees and Bill of Costs is due on January 17, 2007." Extension Order 1 (emphasis added). Moreover, the Extension Order makes no reference to the December 18, 2006 briefing schedule, nor the new due dates of the plaintiffs' supporting memorandum, the defendants' response, and the plaintiffs' reply.

First, the Extension Order could be read to extend the due date of the plaintiffs' attorney's fee motion only, leaving the December 18, 2006 briefing schedule in place for all other submissions. Such an interpretation, however, leads to the nonsensical result that the plaintiffs' supporting memorandum

was due fifteen days prior to their motion. Further, the defendants would have been obliged to file their response brief by January 12, 2007 — five days before the plaintiffs were to file their attorney's fee motion.

Second, the Extension Order could be read as the district court interpreted it — as simply having "extended the [December 18, 2006] briefing schedule by fifteen days." Second Reconsideration Opinion 16. But this interpretation is also untenable because it requires too much supposition. The Extension Order contains no reference to the December 18, 2006 briefing schedule, any "fifteen-day extension" thereof, or any document other than the plaintiffs' attorney's fee motion. Indeed, the Extension Order establishes just one deadline: January 17, 2007, as the due date for the plaintiffs' motion. The Extension Order simply does not convey that the plaintiffs' supporting memorandum — in addition to their motion — was due on January 17, 2007. And the Extension Order by no means implies that fifteen days should also be added to the due dates for the defendants' response and the plaintiffs' reply as a result of the plaintiffs being granted a fifteen-day extension from the December 18, 2006 briefing schedule.

The only reasonable reading of the Extension Order is the third one: that the Order invalidated the December 18, 2006 briefing schedule in favor of the timetable set forth in Local

Rule 109.2.a. Indeed, the plaintiffs' unopposed motion for an extension of time explicitly referenced Rule 109.2.a as the governing authority for the attorney's fee proceedings — a notion uncontroverted at that time by either the district court or the defendants. Under Rule 109.2.a, a supporting memorandum "must be filed within thirty-five days from the date the motion is filed." In the event an appeal is taken, the Rule specifically extends the deadline for the memorandum to "within fourteen days of the issuance of the mandate of the Court of Appeals." Here, the plaintiffs filed their attorney's fee motion on January 16, 2007 — a day before they were required to do so under the Extension Order. Eight days earlier, however, the defendants filed their notice of appeal, which, pursuant to Rule 109.2.a, extended the plaintiffs' supporting memorandum deadline to fourteen days from the issuance of our mandate. When the plaintiffs filed their supporting memorandum on April 26, 2006 — nine days after the mandate issued — they were thus in compliance with Rule 109.2.a. In such circumstances, the district court abused its discretion in ruling that the plaintiffs' memorandum was untimely.[19]

---

[19] The plaintiffs also seek an award of attorney's fees for their work on appeal. Because this request is premature, we reject it without prejudice.

IV.

Pursuant to the foregoing, we affirm the district court's summary judgment award on the Count IV ERISA claim. We vacate its denial of an attorney's fees award to the plaintiffs, however, and remand for further proceedings.

AFFIRMED IN PART,
VACATED IN PART,
AND REMANDED