**NATIONAL CREDIT UNION ADMINISTRATION BOARD, Plaintiff–Appellee,**

v.

**Rosalind D. GRAY, Administratrix of the Estate of Herman Wilson, Defendant–Appellant.**

**No. 92–1226.**

United States Court of Appeals, Fourth Circuit.

Argued May 6, 1993.

Decided Aug. 13, 1993.

Mark Van Lanier Gray, Greensboro, NC, argued for defendant-appellant.

Gary Hamilton Clemmons, Stubbs, Perdue, Chesnutt, Wheeler & Clemmons, P.A., New Bern, NC, argued for plaintiff-appellee.

Before HALL and WILKINS, Circuit Judges, and KISER, United States District Judge for the Western District of Virginia, sitting by designation.

## OPINION

K.K. HALL, Circuit Judge:

This appeal was taken from the denial of two Rule 60(b) motions to set aside the judgment against the estate of Herman Wilson. We remand with instructions to vacate the judgments against the now-deceased Wilson and against the administratrix of his estate.

I

In 1986, Craven County Federal Credit Union (Craven) loaned $38,000 to Aqualands Community Housing Development (Aqualands). The loan was secured by a deed of trust on property on which Aqualands intended to develop low-income housing. The loan documents contain the signatures of Aqualands' president, Rosalind Gray, and its secretary, Herman Wilson. Wilson's signatures are followed by the notation "(GJG)", and his purported signature on the deed of trust is not notarized (Rosalind's is).

In 1987, the National Credit Union Administration Board (National),[1] an independent federal agency, found Craven insolvent and revoked its charter. Craven was ordered into involuntary liquidation, and National, as liquidating agent, began to collect outstanding obligations. In 1988, the Aqualands loan went into default, and National filed the instant action against Rosalind and Wilson. Aqualands was not named.

A single answer was filed on behalf of both defendants by lawyer Mark Gray, Rosalind's brother. By way of defense, the answer states that the debt was incurred by the corporation, not the individuals; that Wilson had neither signed the loan documents nor authorized anyone to sign on his behalf; and that the decision to foreclose was an election of remedies under state law that precluded the collection action.

In August, 1988, National served interrogatories and requests for admissions. Only Rosalind filed a response. In it, she reiterated her contention that the loan was to the corporation only, but she refused to answer any questions about Wilson's role.[2] In response to an interrogatory, however, she did state that Wilson's name on the note was signed by a person named Greta. Rosalind added that she did not know where Greta was.

On February 5, 1990, Mark filed a motion to strike the answer of Wilson on the ground that "defendant Herman Wilson is not repre-

---

1. *See* 12 U.S.C. § 1751 et seq.

2. In response to any question that could be construed as seeking an independent response from

Wilson, Rosalind stated that "Herman Wilson does not respond to these pleadings."

sented by me in this action" and that Wilson had not authorized the filing of an answer on his behalf. The motion was denied by order entered February 28, 1990, in which the magistrate judge instructed Mark that the proper route would be to seek leave to withdraw as counsel for Wilson. In the same order, the court ruled that Wilson would be deemed to have admitted all the items in National's requests for admissions. This latter ruling became the linchpin of the eventual judgment against Wilson and, later, his estate.

On April 9, 1990, National moved for partial summary judgment against Wilson on the basis of his "admissions". Mark filed a response on behalf of both defendants. Attached to this response was an affidavit in which Rosalind averred that Wilson never authorized his signature on the loan documents, that he was not present at the closing, that he never received a copy of the complaint or the loan documents, and that he never authorized Mark to represent him in the lawsuit. Unbeknownst to the court, Wilson had died two months earlier, on February 14, 1990.

The magistrate judge recommended that the partial summary judgment be granted. He discounted Rosalind's affidavit because it was not based on personal knowledge. The district court adopted the magistrate judge's report and entered judgment against Wilson for $54,356.21. The appeal of this judgment was dismissed as interlocutory because Rosalind was still in the case. *National Credit Union Administration Board v. Wilson*, No. 90–2134 (Aug. 24, 1990) (order).

In January, 1991, the court granted National's motion to substitute Rosalind, in her capacity as administratrix of Wilson's estate, as a party in place of the late Mr. Wilson. On February 5, 1991, a stipulation of dismissal without prejudice was filed that had the effect of dismissing Rosalind (in her individual capacity) without a court order. Fed. R.Civ.P. 41(a)(1)(ii).

In the context of ruling on National's motion for attorneys' fees, the district court tied up loose ends. In a final, comprehensive order entered on February 14, 1991, the district court readopted the magistrate judge's recommendation that formed the basis of the partial summary judgment against Wilson. This order also makes it clear that (1) Rosalind, as administratrix, was the defendant instead of Wilson; (2) Rosalind, in her individual capacity, was out of the case entirely; and (3) the judgment was only against the administratrix of Wilson's estate.

On February 25, 1991, Mark filed a Rule 60(b) motion to set aside the February 14th judgment. Attached to the motion was an affidavit by Greta J. Griffin. Griffin stated that she had never met Wilson and that he had never authorized her to put his signature on the loan documents. A second motion was filed on May 28, 1991. The memorandum of law accompanying the latter motion raised a number of defenses and expressly requested relief on the ground that the filing of an answer on Wilson's behalf was "presumptuous" on Mark's part.

The district court adopted the magistrate judge's report and denied the motions. The administratrix appeals.

## II

The case before us is the appeal of the district court's December 20, 1991, order denying the administratrix's Rule 60(b) motions to set aside the February 14, 1991, judgment against the estate. The consideration of Rule 60(b) motions proceeds in two stages. First there is the question of whether the movant has met each of three threshold conditions. "[I]n order to obtain relief from a judgment under Rule 60(b), a moving party must show that his motion is timely, that he has a meritorious defense to the action, and that the opposing party would not be unfairly prejudiced by having the judgment set aside." *Park Corp. v. Lexington Ins. Co.*, 812 F.2d 894, 896 (4th Cir.1987). (A fourth threshold showing, "exceptional circumstances," is sometimes noted, *see, e.g., Werner v. Carbo*, 731 F.2d 204, 207 (4th Cir. 1984)). The district court, in adopting the magistrate judge's recommendation in full, ruled that (1) the administratrix had not shown a meritorious defense, and (2) National would be unfairly prejudiced by having the

judgment set aside.[3]

■ We review denials of Rule 60(b) motions for abuse of discretion. *Werner v. Carbo*, 731 F.2d 204, 206 (4th Cir.1984). "However, where default judgments are at issue, over the years this court has taken an increasingly liberal view of Rule 60(b) ..." *Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp.*, 843 F.2d 808, 810 (4th Cir.1988). Although this case is not technically a default judgment, it resembles one closely enough for the usually strict standard of review to be tempered somewhat.

## A

■ The magistrate judge examined each of the defenses raised in the motions and found each lacking in merit. These defenses were, according to the headings in the magistrate judge's Memorandum and Recommendation, (1) question of Wilson's signature, (2) service of process, (3) authority of Wilson's counsel, (4) corporate or individual loan, and (5) release, accord and satisfaction. The court discounted the strongest substantive defense—that Wilson neither signed nor authorized his name to be signed on the loan documents—by pointing out that Greta Griffin's affidavit (which was attached to the first Rule 60(b) motion) failed to aver that *she* actually signed Wilson's name. This finding relies on an exceedingly fine reading of the affidavit and, moreover, ignores the thrust of the argument that lawyer Gray has been advancing for some time in various, albeit roundabout, ways. However inartfully composed, the affidavit's meaning is clear—Ms. Griffin signed Wilson's signature, and she did so without authority.[4] If proven, this allegation would provide a good defense to the claim.[5] Thus, the meritorious defense threshold has been met.

## B

■ The prejudice factor is of lesser importance. *See Compton v. Alton Steamship Co.*, 608 F.2d 96, 102 (4th Cir.1979) ("[T]he court should in every case give some, though not controlling, consideration to the question whether the party in whose favor judgment has been entered will be unfairly prejudiced by the vacation of his judgment."). The magistrate judge found that National would suffer prejudice because it had prosecuted its claim on the basis of the "deemed admissions" and because Wilson's death (after the date on which the initial discovery responses were due) deprived it of an important source of discovery. We can discern no appreciable prejudice on either basis.

"Additional legal costs ... are the inevitable result whenever a judgment is vacated." *Randall v. Merrill Lynch*, 820 F.2d 1317, 1321 (D.C.Cir.1987) (citing *Werner v. Carbo*, 731 F.2d 204, 207 (4th Cir.1984)), *cert. denied*, 484 U.S. 1027, 108 S.Ct. 753, 98 L.Ed.2d 765 (1988). To the extent that National is complaining that it has lost its chance to question Wilson directly, this lost opportunity is partly of its own making. A close examination of the discovery documents reveals that National failed to attempt to establish the necessary foundation for the judgment against Wilson prior to his death.[6]

In the requests for admissions, National failed to ask whether Wilson had either signed the note or had authorized someone to do so on his behalf. In fact, National seems to have assumed that Wilson did not sign the documents himself—the discovery request asks *Rosalind* to admit that she signed Wilson's name and, if she denied doing so, to state who did. Notwithstanding the omission of any questions directed to Wilson about his signature or authorization, the magistrate judge made a finding that "[t]he defendant

---

**3.** The first motion (including the Griffin affidavit) was filed 11 days after entry of the judgment. The second motion was filed three months later and prior to any hearing on the first motion. The district court made no ruling on the timeliness of the motions.

**4.** To our untrained eyes, the handwriting on both the Wilson signature on the note and the Griffin signature on the affidavit seem very similar.

**5.** In light of our finding that the signature defense is meritorious, it is not necessary to discuss the other defenses raised in the motions.

**6.** The docket sheet contains references to scheduled depositions of Rosalind that were filed on November 28 and December 29, 1989, yet no notice of depositions of Wilson were filed.

Wilson, by his failure to answer requests for admission, admits execution of the Promissory Note, Security Agreement and Deed of Trust."

It appears that the first notice that the court had that Mr. Wilson had died was National's motion to substitute Rosalind, as administratrix of Wilson's estate, as defendant in Wilson's stead. Although this motion was filed almost a full year after Mr. Wilson's death, National was evidently aware of Wilson's death no later than nine days before partial summary judgment was taken July 3, 1990.[7] The movant below met the no-prejudice threshold.

## III

Once the movant has met the threshold showings, he must satisfy one of the six enumerated grounds for relief under Rule 60(b). Having decided that two of the threshold conditions for Rule 60(b) relief had not been met, the district court ended its analysis. We believe this case falls within subsection (b)(6), a "catchall provision which allows a court to grant relief for any reason ..." *Dowell v. State Farm Fire and Cas. Auto Ins. Co.*, 993 F.2d 46, 48 (4th Cir.1993).

### A

Rule 60(b)'s catch-all phrase—any other reason justifying relief—has been described as a "grand reservoir of equitable power to do justice in a particular case." 7 Moore's Federal Practice ¶ 60.27[1] at 60–266 (1993). Although "[t]he remedy provided by the Rule ... is only to be invoked upon a showing of exceptional circumstances ...," *Compton v. Alton Steamship Co.*, 608 F.2d at 102, we believe this case cries out for the exercise of that "equitable power to do justice."

7. By letter dated July 12, 1990, National filed a claim against Wilson's estate in the probate court for the District of Columbia.

8. National's response to the motion to strike the answer was served by mail on February 12, 1990. Mr. Wilson passed away on February 14, 1990. According to lawyer Gray, Mr. Wilson

### B

The problem began, of course, with the filing of an answer on Wilson's behalf by his friend's brother. Within no more than three months, however, Mark Gray evidently decided that it was time to discontinue his representation of a client who had never retained him. Thus, the responses to the plaintiff's requests for admissions were expressly limited to Rosalind. Four months later, Mark's decision to extricate himself manifested itself in his motion to strike the answer of Wilson. In opposing the motion, National suggested that the proper route for lawyer Gray would be to move to withdraw as Mr. Wilson's counsel, but by this time Gray's "client" was dead.[8] As lawyer Gray frankly admitted during oral argument before this court, he is still in the case because he doesn't know how to get out.

It appears indisputable that Wilson never authorized lawyer Gray to represent him in this action, and it is possible that Wilson was never even apprised of the suit itself. National's counsel as much as conceded the first point during oral argument. We are left with the firm impression that Mark's representation of his sister's friend was undertaken with the best of intentions. However, his vacillation between trying to represent Wilson and trying to get out of representing him have confused matters no end. Nevertheless, because we are left with substantial doubts about so many essential matters—was Wilson ever properly served with the complaint? did he ever retain Gray to represent him? did he sign the loan documents or authorize someone to sign on his behalf?—we are convinced that this is the type of extraordinary case for which Rule 60(b)(6) was designed.

## IV

The case is remanded with instructions to vacate the judgments entered on July 3, 1990

died as a result of injuries he received in an accident and which had "rendered him comatose and incapacitated for an extended period of time prior to his death." Appellant's brief at 3. It may be that Mr. Wilson's incapacity extended as far back as May 15, 1989, the date of service of the complaint.

(partial summary judgment against Wilson) and February 14, 1991. On remand, the district court is instructed to permit the remaining defendant, the administratrix,[9] to raise any defenses to this action (including any defense regarding service of process upon Wilson) without regard to the failure of defendant Wilson to respond to the plaintiff's first set of interrogatories and requests for admissions.

REMANDED WITH INSTRUCTIONS.

---

9. The appointment of a personal representative with an apparent conflict of interest with the estate is troubling, but this would appear to be a matter best addressed in the first instance by Wilson's heirs.