DAVIS, Circuit Judge,
dissenting:
I am most pleased to join in full Judge King’s compelling dissenting opinion. I write to offer a few additional observations.
Even a most astute student of this court’s jurisprudence must be forgiven for *521 failing to identify the “rule” of this case. As best as I can discern, the majority’s admonishment to counsel facing analogous circumstances in the future seems to be: “Appeal everything, all the time, right away.” One might question if that is any way to run a (judicial) railroad. Judge King’s excellent dissent, on the other hand, would have the salutary effect of encouraging district courts to correct their own errors when given the opportunity to do so. Here, the district court had that opportunity but elected to let it pass. We should reverse, signaling to district courts around the circuit that such opportunities should be seized, not abjured.
Despite its publication, and thus its precedential character, the majority opinion provides district courts with little guidance beyond the bare ruling itself — the highly fact-specific determination that, under the totality of the circumstances shown, the district court did not “abuse its discretion” in failing to find “extraordinary circumstances” under Fed.R.Civ.P. 60(b)(6). Likewise, there seems scant possibility that a future three-judge panel of this court will find anything helpful here.
We sometimes flash conflicting signals to the district courts as to how they might best exercise their discretion to administer the Federal Rules of Civil Procedure. Compare Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir.1987) (declaring “the affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial [by granting summary judgment]”) (internal quotation marks omitted), with Andrew v. Clark, 561 F.3d 261, 271 (4th Cir.2009) (“The Advisory Committee Notes ... highlight the discretion that district courts are given to deny summary judgment motions even when the standard appears to have been met....”), and Forest Hills Early Learning Ctr., Inc. v. Lukhard, 728 F.2d 230, 245 (4th Cir.1984) (“Even where summary judgment is appropriate on the record so far made in a case, a court may properly decline, for a variety of reasons, to grant it.”) (citations omitted). But, on the whole, we endeavor to provide useful guidance to the district courts in the exercise of their considerable discretion in administering the civil rules. Regrettably, as Judge King’s powerful dissent demonstrates, we have failed in that mission here.
The majority opinion purports to warn against a danger of “giv[ing] Rule 60(b)(6) broad application” as doing so would “undermine numerous other rules that favor the finality of judgments.” Ante at 501. It correctly notes that we review the district court’s ruling for abuse of discretion and that “appeal from the denial of a motion under Rule 60(b)(6) does not bring up the underlying judgment for review.” Ante at 501 (quoting Browder v. Dir., Dep’t of Corrections of Ill, 434 U.S. 257, 263 n. 7, 98 S.Ct. 556, 54 L.Ed.2d 521 (1978)). Yet the very authorities the majority opinion cites demonstrate that it is sometimes impossible to assess the propriety of the district court’s exercise of its considerable discretion without carefully scrutinizing the effect of its underlying error, and moreover, that simple fairness sometimes requires that the majority’s “very strict interpretation of Rule 60(b),” ante at 501 (quoting Liljeberg, 486 U.S. at 873, 108 S.Ct. 2194 (Rehnquist, C.J., dissenting)), give way to a more expansive reading.
In its discussion of the standard of review, the majority cites to two principal cases: Browder and National Credit Union Admin. Bd. v. Gray, 1 F.3d 262, 265 (4th Cir.1993). Ante at 501. Browder adopted the abuse of discretion standard in a footnote, citing to two circuit court cases. One of those, Brennan v. Midwestern United Life Ins. Co., 450 F.2d 999 (7th *522 Cir.1971), actually looked to the merits of the underlying judgment on grounds of fairness:
While Rule 60(b) is not a substitute for an appeal and the finality of judgments ought not be disturbed except on very narrow grounds, a liberal construction should be given the rule to the end that judgments which are void or are vehicles of injustice not be left standing. Accordingly, we believe that the circumstances of this case, including the basis for the relief sought, are such that we may properly make a primary inquiry into the legality of the discovery orders and the procedures leading to the dismissal of movants’ claims.
450 F.2d at 1003 (internal citations omitted) (emphasis added). Among these circumstances was the fact that the district court employed “the drastic sanction of dismissal of [the movants’] claims with prejudice.” The Seventh Circuit concluded its discussion of the proper standard of review by noting, “Under these circumstances, we believe that principles of fairness warrant our giving full consideration to the merits of movants’ arguments.” Id. at 1004. The court ultimately affirmed the denial of the 60(b) motion, but only after determining that it agreed with the district court on the merits.
Similarly, in National Credit Union, we made clear:
We review denials of Rule 60(b) motions for abuse of discretion. Werner v. Carbo, 731 F.2d 204, 206 (4th Cir.1984). “However, where default judgments are at issue, over the years this court has taken an increasingly liberal view of Rule 60(b).... ” Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp., 843 F.2d 808, 810 (4th Cir.1988). Although this case is not technically a default judgment, it resembles one closely enough for the usually strict standard of review to be tempered somewhat.
1 F.3d at 265 (internal citations omitted) (emphasis added). There, the movanVdefendant was ruled to have admitted all items in plaintiffs request for admissions because the lawyer for a co-defendant, who claimed not to have been representing the movant, did not enter answers for him. The district court used these admissions to grant summary judgment to plaintiff with respect to the movant.
That case contains an interpretation of Rule 60(b)(6) that again looks to fairness:
We believe this case falls within subsection (b)(6), a “catchall provision which allows a court to grant relief for any reason.... ” Although “[t]he remedy provided by the Rule ... is only to be invoked upon a showing of exceptional circumstances ...,” Compton v. Alton Steamship Co., 608 F.2d at 102, we believe this case cries out for the exercise of that “equitable power to do justice. ”
Id. at 266 (emphasis added). The court went on to remand with instructions to vacate the underlying judgments.
Of course there are times when the facts surrounding consideration of a Rule 60(b) motion are such that a district court must slam shut the courthouse door to a potentially deserving claimant. But, there are other occasions when a district court may, but is not required, to slam shut that door, and the decision lies within the ambit of the district court’s discretion. Whatever the district court’s decision, we are to reverse only for an abuse of discretion. Yet, by the light of the very cases relied upon by the majority opinion to establish that standard of review, one can see that the equities in a given case may demand that we “temper[ ] somewhat” our “usually strict standard of review” and “exercise ... [our] equitable power to do justice.” Id. at 265-66.
*523 Any suggestion that the “abuse of discretion” standard of review is some immutable mandate that ties the hands of appellate courts was convincingly debunked nearly thirty years ago by Judge Friendly:
When we look at the spectrum of trial court decisions, we find a wide variance in the deference accorded to them by appellate courts. In some instances the trial court is accorded broad, virtually unreviewable discretion.... In others, the trial judge’s decision is accorded no deference beyond its persuasive power.... Our concern is with determinations where the scope of review falls somewhere between these extremes. How much deference should be accorded to various determinations along this continuum? Just as the answer to the constitutional inquiry “what process is due?” depends upon the costs and benefits of procedural safeguards in different instances, defining the proper scope of review of trial court determinations requires considering in each situation the benefits of closer appellate scrutiny as compared to those of greater deference.
Henry J. Friendly, Indiscretion About Discretion, 31 Emory L.J. 747, 755-56 (1982) (footnotes omitted). Disregard of this long-accepted reality runs a grave risk that substantial justice will be denied to those prejudiced by well-meaning district courts and well-intentioned appellate courts.
Thus, where, as here, a district court exercises its discretion in a case-dispositive manner, this court should scrutinize the exercise of that discretion with care to ensure that there has not been “an error of judgment” by the district court. Wilson v. Volkswagen of Am., Inc., 561 F.2d 494, 506 (4th Cir.1977) (warning against the threat of becoming a “rubber stamp” as to dispositive, “door-slamming” orders of district courts). Where, as here, such a prejudicial error of judgment comes before us, we should correct the error. This approach is in keeping with this court’s strong preference that cases be decided on their merits. Cf. Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc., 616 F.3d 413, 417 n. 3 (4th Cir.2010) (“[W]e have long adhered to the sound public policy of deciding cases on their merits, ... and not depriving ... parties] of [their] fair day in court.”) (citations and internal quotations omitted).
Manifestly, no matter how ample a court’s discretion, some decisions will fall outside of it. The fabric of the law may have many swatches of stubborn indeterminacy, but some legal questions really have a right answer, even when their resolution is committed to a court’s discretion. And though in some familiar contexts legal error may survive federal appellate review, e.g., Harrington v. Richter, — U.S.-, 131 S.Ct. 770, 786, 178 L.Ed.2d 624 (2011) (noting that the Antiterrorism and Effective Death Penalty Act shields erroneous state court applications of federal law unless “there is no possibility fair-minded jurists could disagree that the state court’s decision conflicts with [the Supreme] Court’s precedents”), here we exercise direct review of our own lower court’s application of federal law. See Kim McLane Wardlaw, Umpires, Empathy, and Activism: Lessons from Judge Cardozo, 85 Notre Dame L.Rev. 1629, 1634 (2010) (“A swing and a miss is a strike, and the umpire lacks discretion to call it otherwise.”).
The Supreme Court recently reminded us that “[a] trial court has wide discretion when, but only when, it calls the game by the right rules.” Fox v. Vice, — U.S. -, 131 S.Ct. 2205, 2217, 180 L.Ed.2d 45 (2011). In this instance, the district court’s erroneous dismissal of the case in reliance on a requirement that Colonel Aikens exhaust a non-existent administrative remedy, coupled with its subsequent refus *524 al to undo that erroneous order despite the availability of a specific rule of civil procedure designed precisely as a balm for such judicially-inflicted wounds, constituted a failure to “call[] the game by the right rules” and thus an abuse of its “wide discretion.” Id.
Assessing an exercise of discretion, every bit as much as exercising discretion in the first instance, is, like calling balls and strikes, an art and not a science. If indeed we are sometimes “umpires,” the en banc court, like the panels of this court, most often gets it right, but it sometimes makes the wrong call. Because, for the reasons stated so persuasively by Judge King, the en banc majority’s decision in this case must be recorded in the “wrong call” column, I respectfully dissent.