**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 17-6355

UNITED STATES OF AMERICA,

Petitioner − Appellee,

v.

WILLIAM CARL WELSH,

Respondent – Appellant.

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh.  James C. Dever III, District Judge.  (5:11-hc-02209-D)

Argued:  September 20, 2017                                      Decided:  January 12, 2018

Before DUNCAN, DIAZ, and THACKER, Circuit Judges.

Affirmed by published opinion.  Judge Diaz wrote the opinion, in which Judge Duncan joined.  Judge Thacker wrote a dissenting opinion.

**ARGUED:** Jaclyn Lee DiLauro, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Appellant.  Michael Lockridge, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.  **ON BRIEF:** Thomas P. McNamara, Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Appellant.  John Stuart Bruce, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

DIAZ, Circuit Judge:

In January 2011, William Carl Welsh pleaded guilty in an Oregon federal district court to failing to comply with the Sex Offender Registration and Notification Act ("SORNA") and was sentenced to 673 days in the custody of the Bureau of Prisons. Welsh admitted that he had not updated his sex offender registration in Oregon when he left the state to move to Belize. While in the custody of the Bureau of Prisons for that offense, Welsh was certified as a sexually dangerous person and civilly committed under § 4248 of Title 18, enacted by the Adam Walsh Child Protection and Safety Act of 2006.

The Supreme Court later held in a different case that the version of SORNA then applicable to Welsh's offense did not require a sex offender to update his registration in his former homestate after moving to a foreign country. As a result, Welsh successfully moved to have his SORNA conviction vacated. He then sought relief from his civil commitment. Welsh claimed that the judgment was void under Federal Rule of Civil Procedure 60(b)(4) because he was never in the legal custody of the Bureau of Prisons. He also sought relief under Rules 60(b)(5) and 60(b)(6) because his civil commitment was based on a now-vacated conviction.

Because Welsh's civil commitment judgment is not void under Rule 60(b)(4) and the district court had discretion to deny relief under Rules 60(b)(5) and 60(b)(6), we affirm.

I.

Before explaining our decision, we provide additional details of the unusual events giving rise to this appeal.

2

## A.

As we noted earlier, Welsh pleaded guilty to failing to update his registration as a sex offender as required by SORNA, 18 U.S.C. § 2250(a). While Welsh was confined for that offense, the government certified him as a "sexually dangerous person" and transferred him to the Butner Federal Correctional Institution in North Carolina.

Such a certification stayed Welsh's release pending a hearing to determine whether he was a sexually dangerous person. 18 U.S.C. § 4248(a). Under federal law, a person is a "sexually dangerous person" if he has "engaged or attempted to engage in sexually violent conduct or child molestation and . . . is sexually dangerous to others." 18 U.S.C. § 4247(a)(5). A person is sexually dangerous to others if he "suffers from a serious mental illness, abnormality, or disorder as a result of which he would have serious difficulty in refraining from sexually violent conduct or child molestation if released." 18 U.S.C. § 4247(a)(6). If, after a hearing, "the court finds by clear and convincing evidence that the person is a sexually dangerous person, the court shall commit the person to the custody of the Attorney General." 18 U.S.C. § 4248(d).

The U.S. District Court for the Eastern District of North Carolina found Welsh to be a sexually dangerous person and ordered him committed. The court's determination rested largely on Welsh's criminal history, which includes repeated convictions for child molestation, sodomy, and sexual abuse dating back to 1979. The court also "considered Welsh's poor performance on supervision, including his absconding to Belize." J.A. 59. And the court relied on testimony from two experts who, after evaluating Welsh, concluded that he met the criteria for civil commitment.

3

Welsh remains committed at the Butner Federal Correctional Institution. Pursuant to 18 U.S.C. § 4247(e)(B), the director of the facility provides the district court with an annual report on Welsh's mental condition and whether his commitment should continue. Most recently, in Welsh's 2017 annual report, a forensic psychologist concluded that Welsh "continues to suffer from a severe mental illness, abnormality, or disorder that would cause him to experience serious difficulty in refraining from sexually violent conduct or child molestation if he was released to the community" and that "[t]herefore, discharge or conditional release is not recommended at this time." J.A. 149.

B.

In 2016, the Supreme Court decided in *Nichols v. United States* that SORNA—before it was amended in February 2016—did not require a person to update his registration in a state that he was leaving in order to travel to a foreign country. 136 S. Ct. 1113, 1118 (2016). As a result, a federal district court in Oregon granted Welsh's motion to vacate his conviction for violating SORNA, concluding that "the factual basis for the guilty plea . . . did not constitute a federal crime." J.A. 73–74.

With vacatur in hand, Welsh moved for relief from his civil commitment judgment in the Eastern District of North Carolina, pursuant to Federal Rules of Civil Procedure 60(b)(4), (b)(5), and (b)(6). The district court denied the motion. We review denial of a Rule 60(b)(4) motion de novo. *Wendt v. Leonard*, 431 F.3d 410, 412 (4th Cir. 2005). Denial of a Rule 60(b)(5) or 60(b)(6) motion is reviewed for abuse of discretion. *MLC Auto, LLC v. Town of S. Pines*, 532 F.3d 269, 277 (4th Cir. 2008).

4

## II.

To obtain relief from a judgment under Rule 60(b), a moving party must first show (1) that the motion is timely, (2) that he has a meritorious claim or defense, and (3) that the opposing party will not suffer unfair prejudice if the judgment is set aside. *Nat'l Credit Union Admin. Bd. v. Gray*, 1 F.3d 262, 264 (4th Cir. 1993). The party must also satisfy one of six enumerated grounds for relief under Rule 60(b). *Id*. at 266.

### A.

In this case, Welsh sought relief under Rules 60(b)(4), (b)(5), and (b)(6). We start with Welsh's claim under Rule 60(b)(4), which allows relief from a judgment that is void. The rule applies "only in the rare instance where a judgment is premised either on a certain type of jurisdictional error or on a violation of due process that deprives a party of notice or the opportunity to be heard." *U.S. Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 271 (2010).

Federal courts reserve relief under Rule 60(b)(4) "for the exceptional case in which the court that rendered judgment lacked even an 'arguable basis' for jurisdiction." *Id*. When deciding whether an order is "void" under Rule 60(b)(4), "courts must look for the rare instance of a clear usurpation of power," which is "only when there is a total want of jurisdiction and no arguable basis on which it could have rested a finding that it had jurisdiction." *Wendt*, 431 F.3d at 413 (internal quotation marks omitted).

Under the Adam Walsh Act, the government may certify a person as a sexually dangerous person if they: (1) are in the custody of the Bureau of Prisons; (2) have been committed to the custody of the Attorney General pursuant to section 4241(d); or (3) have

5

had all criminal charges dismissed against them solely for reasons relating to their mental condition. 18 U.S.C. § 4248(a). Welsh was certified as a sexually dangerous person under the first category.

Welsh, however, argues that he was never in the legal custody of the Bureau of Prisons because (as the Supreme Court announced in *Nichols*) he never actually committed a crime by failing to register. As a result, he says, the district court lacked subject matter jurisdiction to commit him and its judgment is therefore void. The district court rejected Welsh's argument, holding that § 4248(a)'s custody provision is not jurisdictional, and even if it were, Welsh was in the legal custody of the Bureau of Prisons when he was certified as a sexually dangerous person. We agree.

Specifically, the district court was correct in concluding that § 4248(a)'s custody requirement is not jurisdictional but rather is an element of a civil commitment claim. We begin with first principles. Jurisdiction refers to "a court's adjudicatory authority." *Kontrick v. Ryan*, 540 U.S. 443, 455 (2004). "[J]urisdictional statutes speak to the power of the court rather than to the rights or obligations of the parties." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 274 (1994) (internal quotation marks omitted).

In *Arbaugh v. Y & H Corp.*, the Supreme Court explained how to distinguish "jurisdictional" conditions from mere elements of a claim:

> If the Legislature clearly states that a threshold limitation on a statute's scope shall count as jurisdictional, then courts and litigants will be duly instructed and will not be left to wrestle with the issue. But when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character.

6

546 U.S. 500, 515–16 (2006) (internal citation omitted); *see also Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 163 (2010).  Because nothing in the text of § 4248(a)'s custody requirement suggests that it's a limit on the court's jurisdiction, we think it appropriate to treat it as a mere element of a civil commitment claim.

Welsh contends otherwise, arguing that the government's authority to civilly commit is constitutional only because of the custody requirement.  We accept that premise, but the fact that an element of a claim is constitutionally required does not mean that it is jurisdictional.  *See United States v. Williams*, 341 U.S. 58, 66 (1951) ("Even the unconstitutionality of the statute under which the proceeding is brought does not oust a court of jurisdiction.").

Welsh insists that we've previously recognized the custody requirement as jurisdictional, citing *United States v. Joshua*, 607 F.3d 379, 388 (4th Cir. 2010), and *United States v. Savage*, 737 F.3d 304, 307 (4th Cir. 2013).  *See* Appellant's Br. at 30; Reply Br. at 7.  But *Joshua* doesn't say that § 4248(a)'s custody requirement is a limit on jurisdiction and *Savage* uses the term "jurisdictional authority" in passing.  In short, neither case lends Welsh the support he ascribes to them.

Welsh also claims that § 4248(g) of the Adam Walsh Act confirms the importance of the custody requirement to the federal government's authority to civilly commit a person. The provision states that if a facility director "certifies to the Attorney General that a person, against whom all charges have been dismissed for reasons not related to the

7

mental condition of the person, is a sexually dangerous person, the Attorney General shall release the person . . . ."[1]  18 U.S.C. § 4248(g).

We are not persuaded that this provision has anything to say about whether the custody requirement is a limit on the district court's jurisdiction.  *See, e.g.*, *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 435 (2011) (stating that "[o]ther rules" that don't govern a court's adjudicatory capacity, "even if important and mandatory . . . should not be given the jurisdictional brand.").  In any event, whether or not the custody requirement is jurisdictional, Welsh was in the custody of the Bureau of Prisons when he was certified as a sexually dangerous person.  This is so because at the time of his certification Welsh was still serving a prison sentence pursuant to a court order committing him "to the custody of the United States Bureau of Prisons."  J.A. 22.

Welsh, relying on *Joshua* and *United States v. Comstock*, 560 U.S. 126 (2010), argues that a person can never be in the Bureau's "legal custody" if his underlying conviction is subsequently vacated.  These cases do not support Welsh's premise.  *Joshua*, for example, involved a military court-martial of an Army officer.  607 F.3d at 381.  That officer was eventually transferred from an Army garrison to the Butner Federal Correctional Institution.  *Id.*  There, the Bureau of Prisons housed the officer pursuant to a Memorandum of Agreement with the Army stating that military prisoners transferred to federal prison remain in the "permanent custody" of the U.S. Army.  *Id.* at 382.  When the

---

[1] Because Welsh does not seek relief pursuant to § 4248(g), we do not decide whether this provision could apply to someone like Welsh who was certified as a sexually dangerous person before his underlying criminal conviction was dismissed.

8

government petitioned to civilly commit the officer as a sexually dangerous person, the district court dismissed the petition and we affirmed because the officer was not in the "legal custody" of the Bureau of Prisons as required by the Adam Walsh Act. *Id.* at 391.

By contrast, Welsh *was* in the "legal custody" of the Bureau of Prisons as the term is interpreted in *Joshua*. Unlike the petitioner in *Joshua*, Welsh was "placed in the BOP's custody by statutory authority, not as a matter of convenience." *See Savage*, 737 F.3d at 307. And because the Bureau of Prisons was solely responsible for Welsh's "custody, care, subsistence, education, treatment and training" it had "*legal* custody"—not mere physical custody—over Welsh. *See id.* at 308–09.

This interpretation of "legal custody" is also consistent with the Supreme Court's decision in *Comstock*. There, the question was whether Congress had the constitutional authority to authorize federal civil commitment under § 4248. *Comstock*, 560 U.S. at 129–30. The Court held that § 4248 does not give the federal government an unconstitutional general policing power, but rather, is "a reasonably adapted and narrowly tailored means of pursuing the Government's legitimate interest as a federal custodian in the responsible administration of its prison system." *Id.* at 148.

*Comstock*, while certainly important, does not help Welsh because the constitutional justification for federal civil commitment is rooted in the federal government's role as custodian, not in an underlying criminal conviction. As the Court explained, the Adam Walsh Act is a constitutional means of ensuring the safe and responsible administration of federal prisons because "at common law, one 'who takes charge of a third person' is 'under a duty to exercise reasonable care to control' that person to prevent him from causing

9

reasonably foreseeable 'bodily harm to others.'" *Id.* at 142 (quoting Restatement (Second) of Torts § 319 (Am. Law Inst. 1965)).  The Court likened civil commitment of a sexually dangerous person to a situation where a prisoner is infected by a communicable disease.  In such a scenario, it would be necessary and proper for the government not to release that individual pursuant to its role as federal custodian.  *Id.* at 142-43.

The government's interest in ensuring it doesn't release dangerous individuals into society exists whenever it asserts legal custody over a person, even if the underlying conviction is ultimately vacated.  Nor does the government's constitutional authority to civilly commit depend solely on a criminal conviction because the Adam Walsh Act also authorizes the government to civilly commit individuals deemed incompetent to stand trial or for whom all criminal charges have been dismissed for reasons relating to their mental condition.  *See* 18 U.S.C. § 4248(a).

Thus, regardless of whether § 4248(a)'s custody provision is jurisdictional, Welsh was in the legal custody of the Bureau of Prisons at the time the government certified him as a sexually dangerous person.  The civil commitment judgment is therefore not void.

B.

We turn now to Welsh's argument that the district court abused its discretion by denying him relief under Rules 60(b)(5) and 60(b)(6).  Welsh's burden here is a heavy one, as a district court abuses its discretion only where it "has acted arbitrarily or irrationally[,] . . . has failed to consider judicially recognized factors constraining its exercise of discretion, or when it has relied on erroneous factual or legal premises."  *L.J. v. Wilbon*,

10

633 F.3d 297, 304 (4th Cir. 2011) (alteration in original) (internal quotation marks omitted). The district court did nothing of the sort here.

Rule 60(b) states that a court "may" exercise its power to vacate a judgment under certain circumstances. The remedy though "is extraordinary and is only to be invoked upon a showing of exceptional circumstances." *Compton v. Alton S.S. Co.*, 608 F.2d 96, 102 (4th Cir. 1979). In determining whether to grant relief from judgment under 60(b), a district court must delicately balance "the sanctity of final judgments, expressed in the doctrine of res judicata, and the incessant command of the court's conscience that justice be done in light of [a]ll the facts." *Id.* at 102 (internal quotation marks omitted).

A district court may grant relief under Rule 60(b)(5) if "[1] the judgment has been satisfied, released or discharged; [2] it is based on an earlier judgment that has been reversed or vacated; or [3] applying it prospectively is no longer equitable."[2] In this case, the district court first rejected Welsh's claim for relief under the rule's "no longer equitable clause" which allows for relief from a judgment if "a significant change either in factual conditions or in law renders continued enforcement detrimental to the public interest." *Horne v. Flores*, 557 U.S. 433, 447 (2009) (internal quotation marks omitted). The court held that although there was a change in circumstances, the public nonetheless had a

---

[2] The court may also grant relief under Rule 60(b)(6) for "any other reason" when there are "extraordinary circumstances" and "the reason for relief from judgment does not fall within the list of enumerated reasons given in Rule 60(b)(1)–(5)." *Aikens v. Ingram*, 652 F.3d 496, 500 (4th Cir. 2011). Like the district court, we conclude that Rule 60(b)(6) does not apply because Welsh's claim falls under the more specific Rule 60(b)(5).

11

substantial countervailing interest in Welsh's continued commitment.[3]  In doing so, the district court properly characterized Welsh's argument, applied the appropriate legal standard, and considered the fact that Welsh no longer stands convicted of violating SORNA.

The district court then turned to Welsh's claim under Rule 60(b)(5)'s second clause, which allows for relief from judgment when it is "based on an earlier judgment that has been reversed or vacated."  The district court acknowledged that it had discretion to grant Welsh relief, but noted that Welsh's now-vacated conviction played a very minor role in the substantive decision to commit Welsh and that there was "clear and convincing evidence well beyond the mere fact of Welsh's 2011 judgment in the District of Oregon" to support his civil commitment.  J.A. 113.  The court also discussed a range of factors, including Welsh's interest in release, the courts' interest in finality of judgments, and the public interest in Welsh's continued confinement.  It weighed the factors and (in our view) made a reasonable decision not to grant relief under Rule 60(b)(5).

---

[3] The dissent takes issue with the district court's weighing of the public interest, citing to our decision in *Valero Terrestrial Corp. v. Paige*, where we stated that "considerations of relative fault and public interest are irrelevant to the inquiry for modification or vacatur of an injunction under Rule 60(b)(5) on the grounds of a significant change in fact or law."  211 F.3d 112, 122 (4th Cir. 2000).  The Supreme Court, however, has expressly considered the public interest in this context.  *See Horne*, 557 U.S. at 447; *Rufo v. Inmates of Suffolk Cty. Jail*, 502 U.S. 367, 384, 392 (1992).  Moreover, Rule 60(b)(5) by its terms expressly directs a district court to make an equitable determination, which by definition requires consideration of the various interests at stake.  That is precisely what the district court did here.

12

Welsh argues that the district court failed to appreciate that he would never have been committed but for the now-vacated conviction. That claim, however, does no more than state the predicate for granting relief under the "reversed or vacated" provision of Rule 60(b)(5). Welsh also characterizes civil commitment as punishment for a crime. Civil commitment though is not a form of retribution, but instead aims to incapacitate. *See Kansas v. Hendricks*, 521 U.S. 346, 362 (1997) (finding that a state civil commitment statute is "not retributive because it does not affix culpability for prior criminal conduct," but rather "such conduct is used solely for evidentiary purposes, either to demonstrate that a 'mental abnormality' exists or to support a finding of future dangerousness"). Welsh's allegation of unfairness—that he shouldn't be committed because he didn't commit a crime—can be levied against any form of civil commitment. But of course the Adam Walsh Act expressly authorizes the civil commitment of individuals who were never convicted of a crime. *See* 18 U.S.C. § 4248(a).

Welsh also says that the district court erred in not granting relief because he has avoided any infractions over the past year; he refused to participate in a treatment program for sex offenders only on advice of counsel; and he would be subject to significant reporting requirements if released. But the district court considered these facts and nonetheless found a strong public interest in Welsh's continued confinement given the Bureau of Prisons's forensic psychologists' reports that (1) cast doubt on the progress Welsh had made and (2) concluded that he would "have serious difficulty refraining from acts of sexual violence or child molestation if released." J.A. 114.

13

In sum, the district court weighed carefully the competing interests, in light of all the facts, and reasonably determined that Welsh should remain civilly committed. We decline to upset the court's considered judgment.

## III.

For the reasons given, we affirm in all respects the district court's judgment.

*AFFIRMED*

14

THACKER, Circuit Judge, dissenting:

The majority affirms a district court order denying relief to an individual who has spent the last seven years in federal custody without a valid conviction. I respectfully dissent.

## I.

## A.

The Adam Walsh Act permits the government to subject "sexually dangerous" persons in the custody of the Bureau of Prisons to indefinite civil commitment. 18 U.S.C. § 4248(a). The Supreme Court upheld the Adam Walsh Act as a "'necessary and proper' means of exercising the federal authority that permits Congress to create federal criminal laws, to punish their violation, to imprison violators, to provide appropriately for those imprisoned, and to maintain the security of those who are not imprisoned but who may be affected by the federal imprisonment of others." *United States v. Comstock*, 560 U.S. 126, 149 (2010). In short, the Adam Walsh Act is intrinsically tied to Congress's authority to criminalize conduct. This nexus has constitutional implications. In affirming the civil commitment of an individual who has not engaged in criminal conduct, the majority disregards that constitutional nexus.

## B.

After the district court vacated the criminal conviction upon which his civil commitment was based, Appellant William Carl Welsh moved for relief from the civil commitment order pursuant to Rule 60 of the Federal Rules of Civil Procedure. Before the district court, Welsh argued he was entitled to relief pursuant to Rules 60(b)(4), 60(b)(5),

15

and 60(b)(6). For the reasons aptly set forth in the majority opinion, I agree that Welsh is not entitled to relief under 60(b)(4)'s "void" judgment clause or 60(b)(6)'s "any other reason" provision. However, in my view, Welsh's civil commitment order fits squarely within the purview of Rule 60(b)(5), which provides relief where "the judgment . . . is based on an earlier judgment that has been reversed or vacated[,] or applying [the judgment] prospectively is no longer equitable." Fed. R. Civ. P. 60(b)(5).

## II.

### A.

### *The "Reversed or Vacated" Clause*

Pursuant to the second clause of Rule 60(b)(5), district courts have discretion to grant a party relief from a civil judgment if "the judgment . . . is based on an earlier judgment that has been reversed or vacated." Fed. R. Civ. P. 60(b)(5). This provision applies where an earlier reversed or vacated "judgment itself [was] necessarily considered in [the] later action." *Werner v. Carbo*, 731 F.2d 204, 207 (4th Cir. 1984). Here, the district court acknowledged that Welsh's civil commitment "necessarily considered" his conviction because, absent the conviction, "the BOP would not have had legal custody" over Welsh at the time of the civil commitment hearing. J.A. 106–07.

In my view, the district court abused its discretion by not affording relief in this instance. Appellant's civil commitment judgment, resting on his now vacated conviction, fits so squarely within Rule 60(b)(5)'s "reversed or vacated" clause that I believe it is plainly an abuse of discretion to deny his motion. Reversal is justified on this basis alone.

16

The district court further abused its discretion by improperly weighing the relevant considerations. Having assumed that Rule 60(b)(5)'s "reversed or vacated" clause applied to Welsh, the district court was tasked with determining whether it would exercise its discretion to grant relief. In doing so, the district court weighed "the sanctity of final judgments" against "the incessant command of the court's conscience that justice be done in light of [a]ll the facts." *Compton v. Alton S.S. Co.*, 608 F.2d 96, 102 (4th Cir. 1979) (internal quotation marks omitted). The district court, noting the thoroughness of the civil commitment proceeding in this case, chose to place emphasis on the sanctity of final judgments over justice. Per the district court, vacating the judgment would offend the efforts and resources committed to those proceedings.

But the sanctity of the final civil commitment order cannot bear the weight the district court gives it for at least three reasons. First, civil commitment is indefinite by nature. *See* 18 U.S.C. § 4248(e). The operative finding in a civil commitment hearing -- that the individual is sexually dangerous -- is subject to reaffirmation by government officials on an annual basis. *See id*. § 4247(e)(1)(B). Therefore, finality is not as pressing a concern. Second, vacatur in this case poses little threat to future final judgments. Civil commitment "has been applied to only a small fraction of federal prisoners." *Comstock*, 560 U.S. at 148. Indeed, the district court was "unaware" of any other individual in Welsh's "unusual predicament." J.A. 114. Third, Welsh's "final judgment" is predicated on a vacated conviction. My conscience dictates that such a judgment cannot be treated as sacrosanct.

Against the sanctity of final judgments, the district court weighs the "command . . . that justice be done in light of [a]ll the facts." *Compton*, 608 F.2d at 102. The district court placed emphasis on Welsh's status as a sexually dangerous person. While I certainly credit the government's interest in protecting the public from such danger, vacating Welsh's civil commitment judgment would not leave this interest unaddressed. Welsh would still be subject to SORNA reporting requirements.[1] Indeed, this is precisely how Congress chose to strike the balance between protecting the public and preserving fundamental freedoms of those in Welsh's position. *See* 34 U.S.C. § 20901 (establishing "a comprehensive national system for the registration of . . . offenders" so as "to protect the public from sex offenders and offenders against children.").

## B.

### *The Prospective Application Clause*

The district court also abused its discretion in denying Appellant's motion on equitable grounds. Pursuant to the third clause of Rule 60(b)(5), district courts may grant relief from a judgment if applying it prospectively is no longer equitable in light of "a significant change either in factual conditions or in law." *Rufo v. Inmates of Suffolk Cty. Jail*, 502 U.S. 367, 384 (1992); *see also* Fed. R. Civ. P. 60(b)(5). "The party seeking relief

---

[1] Counsel for the government acknowledged "[Welsh] would be subject to SORNA [upon release], is my understanding." Oral Argument at 22:00, *United States v. Welsh*, No. 17-6355 (4th Cir. Sept. 20, 2017), http://www.ca4.uscourts.gov/oral-argument/listen-to-oral-arguments. Indeed, it appears from the record that Welsh's past convictions qualify him as a tier III sex offender. *See* 34 U.S.C. § 20911(4); J.A. 31. Tier III offenders are subject to SORNA registration requirements for life. 34 U.S.C. § 20915.

bears the burden of establishing that changed circumstances warrant relief, but once a party carries this burden, a court abuses its discretion when it refuses to modify [the judgment] in light of such changes." *Horne v. Flores*, 557 U.S. 433, 447 (2009) (citation and internal quotation marks omitted).

Here, the district court concluded that Welsh failed to meet this burden. While the district court acknowledged that Welsh "no longer stands convicted" of the underlying offense upon which his civil commitment was based, the court nonetheless dismissed that concern by relying entirely upon the *public's* interest in Welsh's "continued commitment . . . on the basis of [his] sexual dangerousness." J.A. 104. This analysis is inappropriate and illogical.

As a preliminary matter, we have declined to engage in a "broad, open-ended equitable balancing test" in the context of Rule 60(b)(5). *Valero Terrestrial Corp. v. Paige*, 211 F.3d 112, 122 (4th Cir. 2000) (internal quotation marks omitted). "[I]n contrast to the inquiry for vacatur . . . under Rule 60(b)(6), considerations of relative fault and *public interest* are irrelevant to the inquiry for . . . vacatur of an injunction under Rule 60(b)(5) on the grounds of a significant change in fact or law." *Id.* (emphasis supplied).

Here, the district court justified its consideration of the public interest by citing two Supreme Court cases. *See Horne*, 557 U.S. at 447; *Rufo*, 502 U.S. at 384. But both *Horne* and *Rufo* are self styled "institutional reform" cases where the *movant's* claimed basis for

19

relief was that continued enforcement would be detrimental to the public interest.[2] *Horne*,

557 U.S. at 447; *Rufo* 502 U.S. at 384. In essence, the language cited by the district court

does not authorize a broad judicial inquiry into the public interest, but instead maps a

possible avenue for relief available to the *movant*. *See Horne*, 447 U.S. at 447 ("[Rule

60(b)(5)] provides a means by which a party can ask a court to modify or vacate a judgment

or order if a significant change either in factual conditions or in the law renders continued

enforcement detrimental to the public interest." (citation and internal quotation marks

omitted)); *Rufo*, 502 U.S. at 384 ("Modification of a [judgment] may be warranted when

changed factual conditions make compliance . . . substantially more onerous . . . . [*or*] when

a [judgment] proves to be unworkable because of unforeseen obstacles . . . *or* when

enforcement . . . would be detrimental to the public interest." (emphasis supplied)).

At core, the operative question is whether "[t]he party seeking relief [met its] burden

of establishing that changed circumstances warrant relief." *Horne*, 557 U.S. at 447. The

---

[2] In *Horne*, the Superintendent of Public Instruction for the state of Arizona sought Rule 60(b)(5) relief from a district court's declaratory judgment order. 557 U.S. at 441–42. The declaratory judgment order imposed a series of obligations on the state of Arizona to comply with the Equal Education Opportunities Act. *Id.* The Superintendent's Rule 60(b) motion alleged "sensitive federalism concerns" because the original order had "the effect of dictating state or local budget priorities." *Id.* at 448.

In *Rufo*, a county sheriff moved to modify a district court consent decree providing for the construction of a new jail. 502 U.S. at 371–72. The Court acknowledged the importance of the public interest in institutional reform litigation specifically because "such [cases] reach beyond the parties involved directly in the suit and impact the public's right to the sound and efficient operation of its institutions." *Id.* at 381 (internal quotation marks omitted).

To be sure, the public interest is a vital concern in cases like *Horne* and *Rufo* where public funds and federalism concerns are at play. But *Horne* and *Rufo* do not signify that the public interest is vital in all cases.

20

changed circumstance here is, of course, the fact that Welsh did not commit the crime with which he was convicted. In turn, the Government has used this erroneous conviction to justify his now seven year (and counting) span of detention in a federal correctional facility. Surely, this is more than sufficient to satisfy Welsh's burden of "establishing that changed circumstances warrant relief." *Horne*, 557 U.S. at 447.

### III.

The district court characterized Welsh's plea for relief from his lengthy, unjustified detention as a "substantial personal interest in release from civil commitment." J.A. 112. This greatly understates the implications of Welsh's continued commitment. In the United States, we detain for *criminal conduct*, not mere propensity. *See Powell v. Texas*, 392 U.S. 514, 543 (1968) (Black, J., concurring) ("[P]unishment for a mere propensity . . . is a situation universally sought to be avoided in our criminal law; [there is a] fundamental requirement that some action be proved . . . ."). This principle is so deeply embedded in our understanding of due process that it is indispensable in a free society. The Adam Walsh Act walks a tightrope by detaining for propensity a narrow group of individuals: those in legal custody of the Bureau of Prisons who are deemed "sexually dangerous." 18 U.S.C. § 4248(a).

But detaining for propensity a citizen who never should have been in federal custody in the first place[3] is not only inequitable, it is offensive to the most basic tenets of justice.

---

[3] The majority asserts that "the government's constitutional authority to civilly commit [does not] depend solely on a criminal conviction." *Ante* at 10. It bases this claim on a never challenged provision permitting civil commitment of individuals "against whom

21

Yet the district court failed to mention, address, or weigh the public's interest in checking the government's power to detain citizens merely by virtue of their alleged propensities. To ignore that interest is to ignore a vital cornerstone of a free society, in favor of emphasizing a general public risk.

Accordingly, I respectfully dissent.

---

all criminal charges have been dismissed solely for reasons relating to the mental condition of the person." 18 U.S.C. § 4248(a). In light of *Comstock*, this position is on thin ice. *See Comstock*, 560 U.S. at 149. For me, extending *Comstock* to permit the commitment of the factually and legally innocent is a bridge too far.